## LYNCH *v.* UNITED STATES.*

No. 855. Argued May 7, 1934.—Decided June 4, 1934.

---

* Together with No. 861, *Wilner* v. *United States,* certiorari to the Circuit Court of Appeals for the Seventh Circuit.

*Mr. Rowland W. Fixel,* with whom *Messrs. Arthur E. Fixel, John J. McCreary,* and *M. Frome Barbour* were on the brief, for petitioner in No. 855.

*Mr. Edward H. S. Martin* for petitioner in No. 861.

*Solicitor General Biggs,* with whom *Assistant to the Attorney General Stanley* and *Messrs. Will G. Beardslee* and *Charles Bunn* were on the brief, for the United States.

Mr. Justice Brandeis delivered the opinion of the Court.

These cases, which are here on certiorari, present for decision the same question. In each, the plaintiff is the beneficiary under a policy for yearly renewable term insurance [1] issued during the World War pursuant to the War Risk Insurance Act of October 6, 1917, c. 105,

---

[1] Section 404 provides: "That during the period of war and thereafter until converted the insurance shall be term insurance for successive terms of one year each. Not later than five years after the date of the termination of the war as declared by proclamation of the President of the United States, the term insurance shall be converted, without medical examination, into such form or forms of insurance as may be prescribed by regulations and as the insured may request. Regulations shall provide for the right to convert into ordinary life, twenty payment life, endowment maturing at age sixty-two, and into other usual forms of insurance. . . ."

Article IV, §§ 400–405. The actions were brought in April, 1933, in federal district courts to recover amounts alleged to be due. In each case it is alleged that the insured had, before September 1, 1919 and while the policy was in force, been totally and permanently disabled; that he was entitled to compensation sufficient to pay the premiums on the policy until it matured by death; that no compensation had ever been paid; that the claim for payment was presented by the beneficiary after the death of the insured; that payment was refused; and that thereby the disagreement arose which the law makes a condition precedent to the right to bring suit. In No. 855, which comes here from the Fifth Circuit, the insured died November 27, 1924. In No. 861, which comes here from the Seventh Circuit, the insured died May 15, 1929.

In each case, the United States demurred to the petition on the ground that the court was without jurisdiction to entertain the suit, because the consent of the United States to be sued had been withdrawn by the Act of March 20, 1933, c. 3, 48 Stat. 9, commonly called the Economy Act.

The plaintiffs duly claimed that the Act deprived them of property without due process of law in violation of the Fifth Amendment. The district courts overruled the objection; sustained the demurrers and dismissed the complaints. Their judgments were affirmed by the circuit courts of appeals. 67 F. (2d) 490; 68 *id*. 442. The only question requiring serious consideration relates to the construction and effect to be given to the clause of § 17 of the Economy Act upon which the Government relies; for the character and incidents of War Risk Insurance and the applicable rules of constitutional law have been settled by decisions of this Court. The clause in question is:

". . . all laws granting or pertaining to yearly renewable term insurance are hereby repealed. . . ."

*First.* War Risk Insurance policies are contracts of the United States. As consideration for the Government's obligation, the insured paid prescribed monthly premiums. *White* v. *United States,* 270 U.S. 175, 180. True, these contracts, unlike others, were not entered into by the United States for a business purpose. The policies granted insurance against death or total disability without medical examination, at net premium rates based on the American Experience Table of Mortality and three and one-half per cent interest, the United States bearing both the whole expense of administration and the excess mortality and disability cost resulting from the hazards of war. In order to effect a benevolent purpose heavy burdens were assumed by the Government.[2] But the policies, although not entered into for gain, are legal obligations of the same dignity as other contracts of the United States and possess the same legal incidents.

War Risk Insurance, while resembling in benevolent purpose pensions, compensation allowances, hospital and other privileges accorded to former members of the army and navy or their dependents, differs from them funda-

---

[2] The disbursements to June 30, 1933, for term and automatic insurance (the latter provided for those who were permanently and totally disabled or who died within 120 days after entrance into the service and before making application for term insurance) exceeded the premium receipts by $1,166,939,057. Administrator of Veterans' Affairs, Report for Year 1933, p. 28. The annual cost of administration was estimated at $1,744,038.56. Report of United States Veterans' Bureau for 1922, p. 465. War Risk Insurance was devised in the hope that it would, in large measure, avoid the necessity of granting pensions. Term insurance was issued at a very low premium rate. Over 4,684,000 persons applied before the armistice to the amount of about $40,000,000,000 for War Risk term insurance; but over 75 per cent. of the men who carried term insurance while in the service never paid a premium after the war. See Report of Bureau of War Risk Insurance for 1920, pp. 5, 7, 41; Report of United States Veterans' Bureau for 1922, p. 456; for 1925, p. 268.

mentally in legal incidents. Pensions, compensation allowances and privileges are gratuities. They involve no agreement of parties; and the grant of them creates no vested right. The benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of Congress. *United States* v. *Teller,* 107 U.S. 64, 68; *Frisbie* v. *United States,* 157 U.S. 160, 166; *United States* v. *Cook,* 257 U.S. 523, 527. On the other hand War Risk policies, being contracts, are property and create vested rights. The terms of these contracts are to be found in part in the policy, in part in the statutes under which they are issued and the regulations promulgated thereunder.

In order to promote efficiency in administration and justice in the distribution of War Risk Insurance benefits, the Administration was given power to prescribe the form of policies and to make regulations. The form prescribed provided that the policy should be subject to all amendments to the original Act, to all regulations then in force or thereafter adopted. Within certain limits of application this form was deemed authorized by the Act, *White* v. *United States,* 270 U.S. 175, 180, and, as held in that case, one whose vested rights were not thereby disturbed could not complain of subsequent legislation affecting the terms of the policy. Such legislation has been frequent.[3] Moreover, from time to time, privileges granted

[3] Extension of class of beneficiaries: Acts of June 25, 1918, c. 104, § 2, 40 Stat. 609; Dec. 24, 1919, c. 16, §§ 2, 3, 4, 13, 41 Stat. 371, 375; Aug. 9, 1921, c. 57, § 23, 42 Stat. 147, 155; May 29, 1928, c. 875, § 13, 45 Stat. 964, 967. Upheld: *White* v. *United States,* 270 U.S. 175.

Payment where beneficiary dies before exhaustion of policy: e.g., Dec. 24, 1919, c. 16, §§ 15, 16, 41 Stat. 371, 376; Aug. 9, 1921, c. 57, § 26, 42 Stat. 147, 156; June 7, 1924, c. 320, § 26, 43 Stat. 607, 614.

Payment where beneficiary incompetent: e.g., Dec. 24, 1919, c. 16, § 5, 41 Stat. 371; Mar. 2, 1923, c. 173, § 1, 42 Stat. 1374; July 2, 1926, c. 723, § 2, 44 Stat. 790, 791.

were voluntarily enlarged and new ones were given by the Government.[4]  But no power to curtail the amount of the benefits which Congress contracted to pay was reserved to Congress; and none could be given by any regulation promulgated by the Administrator.  Prior to the Economy Act, no attempt was made to lessen the obligation of the Government.[5]  Then, Congress, by a clause of thirteen words included in a very long section dealing with gratuities, repealed " all laws granting or pertaining

---

[4] Reinstatement of lapsed policies: Aug. 9, 1921, c. 57, § 27, 42 Stat. 147, 156; Mar. 4, 1923, c. 291, § 7, 42 Stat. 1521, 1525; July 2, 1926, c. 723, §§ 15, 17, 44 Stat. 790, 799, 800.

Liability undertaken on certain policies which have lapsed through failure of payment of premiums, been cancelled by surrender or estoppel of later contract: e.g., Dec. 24, 1919, c. 16, § 12, 41 Stat. 371, 374; Aug. 9, 1921, c. 57, § 27, 42 Stat. 147, 156; July 3, 1930, c. 849, § 24, 46 Stat. 991, 1001.

Incontestability in favor of insured: Aug. 9, 1921, c. 57, § 30, 42 Stat. 147, 157; July 3, 1930, c. 849, § 24, 46 Stat. 499, 1001.

Administration may waive time for premium payment, grant various tolerances: Aug. 9, 1921, c. 57, §§ 24, 28, 42 Stat. 147, 155, 157; Mar. 4, 1923, c. 291, § 8, 42 Stat. 1521, 1526.

Proceeds exempted from taxation: June 25, 1918, c. 104, § 2, 40 Stat. 609.

The War Risk Insurance Act provided for the conversion of yearly renewable term insurance into level premium insurance at any time within five years from the date of the termination of the war; and The World's War Veterans' Act of June 7, 1924, c. 320, § 304, 43 Stat. 607, 625, provided that all yearly renewable term insurance should cease on July 2, 1926.  But provision for extending the period for conversion and for reinstatement were made by later statutes and by regulations issued thereunder; June 2, 1926, c. 449, 44 Stat. 686; May 29, 1928, c. 875, § 14, 45 Stat. 964, 968; July 3, 1930, c. 849, § 22, 46 Stat. 991, 1001; June 24, 1932, c. 276, 47 Stat. 334. See Reports of United States Veterans' Bureau for 1926, pp. 54–56; for 1927, pp. 23–25; Reports of Administrator of Veterans' Affairs for 1931, p. 32; for 1932, p. 42; for 1933, p. 28.

[5] But compare Acts of June 25, 1918, c. 104, § 2, 40 Stat. 609; Aug. 9, 1921, c. 57, § 15, 42 Stat. 147, 152; March 4, 1923, c. 291, § 1, 42 Stat. 1521; March 4, 1925, c. 553, § 3, 43 Stat. 1302, 1303.

to yearly renewable term insurance." The repeal, if valid, abrogated outstanding contracts; and relieved the United States from all liability on the contracts without making compensation to the beneficiaries.

*Second.* The Fifth Amendment commands that property be not taken without making just compensation. Valid contracts are property, whether the obligor be a private individual, a municipality, a State or the United States. Rights against the United States arising out of a contract with it are protected by the Fifth Amendment. *United States* v. *Central Pacific R. Co.*, 118 U.S. 235, 238; *United States* v. *Northern Pacific Ry. Co.*, 256 U.S. 51, 64, 67. When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals.[6] That the contracts of war risk insurance were valid when made is not questioned. As Congress had the power to authorize the Bureau of War Risk Insurance to issue them, the due process clause prohibits the United States from annulling them, unless, indeed, the action taken falls within the federal police power or some other paramount power.[7]

The Solicitor General does not suggest, either in brief or argument, that there were supervening conditions

---

[6] Compare *United States* v. *Bank of the Metropolis*, 15 Pet. 377, 392; *The Floyd Acceptances*, 7 Wall. 666, 675; *Garrison* v. *United States*, 7 Wall. 688, 690; *Smoot's Case*, 15 Wall. 36, 47; *Vermilye & Co.* v. *Adams Express Co.*, 21 Wall. 138, 144; *Cooke* v. *United States*, 91 U.S. 389, 396; *United States* v. *Smith*, 94 U.S. 214, 217; *Hollerbach* v. *United States*, 233 U.S. 165, 171; *Reading Steel Casting Co.* v. *United States*, 268 U.S. 186, 188; *United States* v. *National Exchange Bank*, 270 U.S. 527, 534.

[7] Compare *Lottery Case*, 188 U.S. 321; *Hipolite Egg Co.* v. *United States*, 220 U.S. 45, 58; *Hoke* v. *United States*, 227 U.S. 308, 323; *Hamilton* v. *Kentucky Distilleries & Warehouse Co.*, 251 U.S. 146; *Calhoun* v. *Massie*, 253 U.S. 170, 175. Compare *Home Building & Loan Assn. v. Blaisdell*, 290 U.S. 398, 430.

which authorized Congress to abrogate these contracts in the exercise of the police or any other power. The title of the Act of March 20, 1933, repels any such suggestion. Although popularly known as the Economy Act, it is entitled an "Act to maintain the credit of the United States." Punctilious fulfillment of contractual obligations is essential to the maintenance of the credit of public as well as private debtors. No doubt there was in March, 1933, great need of economy. In the administration of all government business economy had become urgent because of lessened revenues and the heavy obligations to be issued in the hope of relieving widespread distress. Congress was free to reduce gratuities deemed excessive. But Congress was without power to reduce expenditures by abrogating contractual obligations of the United States. To abrogate contracts, in the attempt to lessen government expenditure, would be not the practice of economy, but an act of repudiation. " The United States are as much bound by their contracts as are individuals. If they repudiate their obligations, it is as much repudiation, with all the wrong and reproach that term implies, as it would be if the repudiator had been a State or a municipality or a citizen." *Sinking-Fund Cases,* 99 U.S. 700, 719.

*Third.* Contracts between individuals or corporations are impaired within the meaning of the Constitution whenever the right to enforce them by legal process is taken away or materially lessened.[8] A different rule prevails in respect to contracts of sovereigns. Compare *Principality of Monaco* v. *Mississippi, ante,* p. 313. " The contracts between a Nation and an individual are only binding on the conscience of the sovereign and have no

---

[8] See *Worthen Co.* v. *Thomas, ante,* p. 426; and cases cited by Mr. Justice Sutherland in *Home Building & Loan Assn.* v. *Blaisdell,* 290 U.S. 398, 448.

pretensions to compulsive force. They confer no right of action independent of the sovereign will." [9]   The rule that the United States may not be sued without its consent is all embracing.

In establishing the system of War Risk Insurance, Congress vested in its administrative agency broad power in making determinations of essential facts—power similar to that exercised in respect to pensions, compensation, allowances and other gratuitous privileges provided for veterans and their dependents.  But while the statutes granting gratuities contain no specific provision for suits against the United States,[10] Congress, as if to emphasize the contractual obligation assumed by the United States when issuing War Risk policies, conferred upon beneficiaries substantially the same legal remedy which beneficiaries enjoy under policies issued by private corporations.  The original Act provided in § 405:

" That in the event of disagreement as to a claim under the contract of insurance between the bureau and any beneficiary or beneficiaries thereunder, an action on the claim may be brought against the United States in the district court of the United States in and for the district in which such beneficiaries or any one of them resides." [11]

Although consent to sue was thus given when the policy issued, Congress retained power to withdraw the consent at any time.  For consent to sue the United States is a privilege accorded; not the grant of a property right protected by the Fifth Amendment.  The consent may be withdrawn, although given after much deliberation and for a pecuniary consideration.  *DeGroot* v. *United States,*

---

[9] Hamilton, The Federalist, No. 81.

[10] See Sixth, *infra*, p. 587.

[11] The provision for suit was later modified.  See World War Veterans' Act 1924, § 19, as amended by Act of July 3, 1930, c. 849, 46 Stat. 991, 992, under which these suits were brought.

5 Wall. 419, 432. Compare *Darrington* v. *State Bank*, 13 How. 12, 17; *Beers* v. *Arkansas*, 20 How. 527–529; *Gordon* v. *United States*, 7 Wall. 188, 195; *Railroad Co.* v. *Tennessee*, 101 U.S. 337; *Railroad Co.* v. *Alabama*, 101 U.S. 832; *In re Ayers*, 123 U.S. 443, 505; *Hans* v. *Louisiana*, 134 U.S. 1, 17; *Baltzer* v. *North Carolina*, 161 U.S. 240; *Baltzer & Taaks* v. *North Carolina*, 161 U.S. 246.[12] The sovereign's immunity from suit exists whatever the character of the proceeding or the source of the right sought to be enforced. It applies alike to causes of action arising under acts of Congress, *DeGroot* v. *United States*, 5 Wall. 419, 431; *United States* v. *Babcock*, 250 U.S. 328, 331; and to those arising from some violation of rights conferred upon the citizen by the Constitution, *Schillinger* v. *United States*, 155 U.S. 163, 166, 168. The character of the cause of action—the fact that it is in contract as distinguished from tort—may be important in determining (as under the Tucker Act) whether consent to sue was given. Otherwise, it is of no significance. For immunity from suit is an attribute of sovereignty which may not be bartered away.

Mere withdrawal of consent to sue on policies for yearly renewable term insurance would not imply repudiation. When the United States creates rights in individuals against itself, it is under no obligation to provide a remedy through the courts. *United States* v. *Babcock*, 250 U.S. 328, 331. It may limit the individual to administrative remedies. *Tutun* v. *United States*, 270 U.S. 568, 576. And withdrawal of all remedy, administrative as well as legal, would not necessarily imply repudiation. So long as the contractual obligation is recognized, Congress may direct its fulfilment without the interposition of either a court or an administrative tribunal.

---

[12] Compare also *Imhoff-Berg Silk Dyeing Co.* v. *United States*, 43 F. (2d) 836, 841; *Synthetic Patents Co.* v. *Sutherland*, 22 F. (2d) 491, 494; *Kogler* v. *Miller*, 288 Fed. 806.

*Fourth.* The question requiring decision is, therefore, whether in repealing " all laws granting or pertaining to yearly renewable term insurance " Congress aimed at the right or merely at the remedy. It seems clear that it intended to take away the right; and that Congress did not intend to preserve the right and merely withdraw consent to sue the United States.[13] As Congress took away the contractual right it had no occasion to provide for withdrawal of the remedy. Moreover, it appears both from the language of the repealing clause and from the context of § 17 that Congress did not aim at the remedy. The clause makes no mention of consent to sue. The consent to sue had been given originally by § 405 of the Act of 1917, which, like the later substituted sections, applied to all kinds of insurance, making no specific reference to yearly renewable term policies. Obviously, Congress did not intend to repeal generally the section providing for suits.[14] For in March 1933, most of the policies then outstanding were " converted " policies, in no way affected by the Economy Act.[15]

That Congress sought to take away the right of beneficiaries of yearly renewable term policies and not to withdraw their privilege to sue the United States, appears, also, from an examination of the other provisions of § 17. The section reads:

"All public laws granting medical or hospital treatment, domiciliary care, compensation and other allowances, pen-

[13] Veteran Regulation No. 8, promulgated March 31, 1933, pursuant to this Act provides: " V. Except as stated above [matter not here relevant] no payment may hereafter be made under contracts of yearly renewable term insurance (including automatic insurance) and all pending claims or claims hereafter filed for such benefits shall be disallowed."

[14] See Note 11.

[15] The number of " converted policies " in force June 30, 1933, was 616,069. Administrator of Veterans' Affairs, Report for 1933, pp. 25, 27.

sions, disability allowance, or retirement pay to veterans and the dependents of veterans of the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection, and the World War, or to former members of the military and naval service for injury or disease incurred or aggravated in the line of duty in the military or naval service (except so far as they relate to persons who served prior to the Spanish-American War and to the dependents of such persons, and the retirement of officers and enlisted men of the Regular Army, Navy, Marine Corps, or Coast Guard) are hereby repealed, and all laws granting or pertaining to yearly renewable term insurance are hereby repealed, but payments in accordance with such laws shall continue to the last day of the third calendar month following the month during which this Act is enacted." [16]

---

[16] The rest of the section is as follows:

" The Administrator of Veterans' Affairs under the general direction of the President shall immediately cause to be reviewed all allowed claims under the above referred to laws and where a person is found entitled under this Act, authorize payment or allowance of benefits in accordance with the provisions of this Act commencing with the first day of the fourth calendar month following the month during which this Act is enacted and notwithstanding the provisions of section 9 of this Act, no further claim in such cases shall be required. *Provided,* That nothing contained in this section shall interfere with payments heretofore made or hereafter to be made under contracts of yearly renewable term insurance which have matured prior to the date of enactment of this Act and under which payments have been commenced, or on any judgment heretofore rendered in a court of competent jurisdiction in any suit on a contract of yearly renewable term insurance, or which may hereafter be rendered in any such suit now pending: *Provided further,* That, subject to such regulations as the President may prescribe, allowances may be granted for burial and funeral expenses and transportation of the bodies (including preparation of the bodies) of deceased veterans of any war to the places of burial thereof in a sum not to exceed $107 in any one case.

" The provisions of this title shall not apply to compensation or pension (except as to rates, time of entry into active service and

That section deals principally with the many grants of gratuities to veterans and dependents of veterans. Congress apparently assumed that there was no difference between the legal status of these gratuities and the outstanding contracts for yearly renewable term insurance. It used in respect to both classes of benevolences the substantially same phrase. It repealed " all public laws " relating to the several categories of gratuities; and it repealed " all laws granting or pertaining to " such insurance. No right to sue the United States on any of these gratuities had been granted in the several statutes conferring them; and the right to the gratuity might be withdrawn at any time. The dominant intention was obviously to abolish rights, not remedies.

That Congress intended to take away the right under outstanding yearly renewable term policies, and was not concerned with the consent to sue the United States thereon, appears also from the saving clauses in § 17. These provide that " all allowed claims under the above referred to laws " are to be reviewed and the benefits are to be paid " where a person is found entitled under this Act "; and that " nothing contained in this section shall interfere with payments to be made under contracts of yearly renewable term insurance under which payments have commenced, or on any judgment heretofore rendered in a court of competent jurisdiction in any suit on a contract of yearly renewable term insurance, or which may hereafter be rendered in any such suit now pending."

---

special statutory allowances) being paid to veterans disabled, or dependents of veterans who died, as the result of disease or injury directly connected with active military or naval service (without benefit of statutory or regulatory presumption of service connection) pursuant to the provisions of the laws in effect on the date of enactment of this Act. The term ' compensation or pension ' as used in this paragraph shall not be construed to include 'emergency officer's retired pay referred to in section 10 of this title."

That is, the rights under certain yearly renewable term policies are excepted from the general repealing clause.[17]

*Fifth.* There is a suggestion that although, in repealing all laws "granting or pertaining to yearly renewable term insurance," Congress intended to take away the contractual right, it also intended to take away the remedy; that since it had power to take away the remedy, the statute should be given effect to that extent, even if void insofar as it purported to take away the contractual right. The suggestion is at war with settled rules of construction. It is true that a statute bad in part is not necessarily void in its entirety. A provision within the legislative power may be allowed to stand if it is separable from the bad. But no provision however unobjectionable in itself, can stand unless it appears both that, standing alone, the provision can be given legal effect and that the legislature intended the unobjectionable provision to stand in case other provisions held bad should fall. *Dorchy* v. *Kansas,* 264 U.S. 286, 288, 290. Here, both those essentials are absent. There is no separate provision in § 17 dealing with the remedy; and it does not appear that Congress wished to deny the remedy if the repeal of the contractual right was held void under the Fifth Amendment.

War Risk Insurance and the war gratuities were enjoyed, in the main, by the same classes of persons; and were administered by the same governmental agency. In respect of both, Congress had theretofore expressed its benevolent purpose perhaps more generously than would have been warranted in 1933 by the financial condition of the Nation. When it became advisable to reduce the Nation's existing expenditures, the two classes of benevolences were associated in the minds of the legislators; and it was natural that they should have wished to sub-

---

[17] Compare Veteran Regulation No. 8, March 31, 1933.

ject both to the same treatment. But it is not to be assumed that Congress would have resorted to the device of withdrawing the legal remedy from beneficiaries of outstanding yearly renewable term policies if it had realized that these had contractual rights. It is, at least, as probable that Congress overlooked the fundamental difference in legal incidents between the two classes of benevolences dealt with in § 17 as that it wished to evade payment of the Nation's legal obligations.

*Sixth.* The judgments below appear to have been based, in the main, not on § 17 of the Economy Act, but on § 5 which provides:

"All decisions rendered by the Administrator of Veterans' Affairs under the provisions of this title, or the regulations issued pursuant thereto, shall be final and conclusive on all questions of law and fact, and no other official or court of the United States shall have jurisdiction to review by mandamus or otherwise any such decision."

This section, as the Solicitor General concedes, does not relate to War Risk Insurance. It concerns only grants to veterans and their dependents—pensions, compensation allowances and special privileges, all of which are gratuities. The purpose of the section appears to have been to remove the possibility of judicial relief in that class of cases even under the special circumstances suggested in *Crouch* v. *United States,* 266 U.S. 180; *Silberschein* v. *United States,* 266 U.S. 221; *United States* v. *Williams,* 278 U.S. 255; *Smith* v. *United States,* 57 F. (2d) 998. Compare *United States* v. *Meadows,* 281 U.S. 271.

*Seventh.* The Solicitor General concedes that in No. 861 no question is presented except that of jurisdiction dependent upon the construction of the clause in § 17 of the Economy Act discussed above. He contends in No. 855, that if jurisdiction is entertained, the demurrer

should be sustained on the ground that the complaint fails to set forth a good cause of action, since it fails to show that the suit was brought within the period allowed by law. This alleged defect was not pleaded or brought to the attention of either of the courts below. Nor was it brought by the Solicitor General to the attention of this Court when opposing the petition for a writ of certiorari. We do not pass upon that question, which like others relating to the merits, will be open for consideration by the lower courts upon the remand.

*Eighth.* Mention should be made of legislation by Congress enacted since the commencement of these suits.

■ Act of June 16, 1933, c. 101, § 20, 48 Stat. 309 provides:

" Notwithstanding the provisions of section 17, title I, Public Numbered 2, Seventy-third Congress, any claim for yearly renewable term insurance on which premiums were paid to the date of death of the insured . . . under the provisions of laws repealed by said section 17 wherein claim was duly filed prior to March 20, 1933, may be adjudicated by the Veterans' Administration on the proofs and evidence received by Veterans' Administration prior to March 20, 1933, and any person found entitled to the benefits claimed shall be paid such benefits in accordance with and in the amounts provided by such prior laws. . . ."

■ Section 35 of the Independent Offices Appropriation Act of 1935, passed on March 27–28, 1934, over the President's veto, provides:

" That notwithstanding the provisions of section 17 of title I, of an Act entitled 'An Act to maintain the Credit of the United States Government' approved March 20, 1933, and section 20 of an Act entitled 'An Act making appropriations for the Executive offices, etc. . . .' approved June 16, 1933, any claim for yearly renewable term insurance under the provisions of laws repealed by said section 17, wherein claim was duly filed prior to

March 20, 1933, and on which maturity of the insurance contract had been determined by the Veterans' Administration prior to March 20, 1933, and where payments could not be made because of the provisions of the Act of March 20, 1933, or under the provisions of the Act of June 16, 1933, may be adjudicated by the Veterans' Administration and any person found entitled to yearly renewable term insurance benefits claimed shall be paid such benefits in accordance with and in the amounts provided by such prior laws." [18]

The provision in the Act of June 16, 1933, which was enacted before the entry of judgments by the district courts, does not appear to have been considered by the lower courts. The provision in the Act of March 27–28, 1934, was enacted after the filing in this Court of the petitions for certiorari but before the writs were granted. As neither of these Acts was referred to by the Solicitor General or by counsel for the petitioners, we assume that there is nothing in them, or in any action taken thereunder, which should affect the disposition of the cases now before us. Any such matter also will be open for consideration by the lower courts upon the remand.

*Reversed.*

---

[18] See instructions issued April 11, 1934, by the Administrator of Veterans' Affairs, pursuant to the Act of March 27–28.