## JACKSON v. UNITED STATES.
### No. 3592.

District Court, E. D. South Carolina.
March 26, 1936.

R. K. Wise, of Columbia, S. C., and Anderson G. Ulmer, of Savannah, Ga., for plaintiff.

Claude N. Sapp, U. S. Atty., S. H. Edmunds, Jr., Asst. U. S. Atty., of Charleston, S. C., and R. E. Wilson, Atty., Department of Justice, of Columbia, S. C., for the United States.

MYERS, District Judge.

This cause was submitted to a jury at the January term in Charleston, to determine the sole issue then raised—whether the minor claimant was the legitimate child of one Jake Jackson, who was drafted into service from 'Jasper county, S. C., on the 27th day of April, 1918, and who died in the army service on the 11th day of May, 1918. The claim of the minor was submitted to the Bureau under sections 400 to 405 of the War Risk Insurance Act of Oct. 6, 1917 (40 Stat. 409, 410), by a guardian appointed in the probate courts of Georgia. Notice was given that the claim had been allowed and the allotment made under section 401, and would be paid to any one authorized to receive it in the minor's behalf by the probate court of Jasper county, S. C., where the claimant resided. A guardian being then appointed in Jasper county, S. C., as required, the Director of the Bureau refused to pay, giving the reason that investigation failed to show that Ben B. Jackson was the legitimate child of the soldier by right of whose services the claim was made.

Marriage in South Carolina is not a civil contract, but a status. The evidence adduced on trial showed that the soldier Jackson, an ignorant negro, had been living in a suburb of Ridgeland, Jasper county, with a woman not his wife. When the woman became pregnant, the question of marriage arose. They continued to live together openly as husband and wife, the woman and her child—the claimant here—supported by Jackson. The woman retained her name, but the child was called Jackson, and was recognized as his in the community where they were "accepted as husband and wife." Testimony to this effect was accentuated by a "buddy" of Jackson's, a colaborer on a railroad gang, who told of his relations with a sister of Jackson's "woman" at the time the question of marriage arose, and of their continuation illicitly, in a quite different way from the recognized and open course thereafter followed by Jackson and the mother of his son.

The defense relied upon the statements of Jackson when he entered the service that he was unmarried, and that his nearest relative was a sister.

■ Under the law of this state, continuance of illicit relations between a man and a woman cannot of themselves ripen into marriage, but declarations and manner of the parties, following a period of concubinage, may be liberally construed to create a state of marriage in support of legitimacy of offspring, and of rights arising under the laws of dower and of inheritance. Every case, therefore, in which the question arises, is determined by its own particular facts and circumstances. It may well follow, then, that a man—and particularly an ignorant laborer such as Jackson was—may not be conscious, in the absence of a marriage ceremony or specific declarations recognizing a state of marriage, that in the eye of the law he is a married man and father of a child recognized as legitimate under the inheritance statutes and otherwise.

■ So was the jury informed as to the law, and their verdict settled the legal rights of the claimant, with ample support in law and fact.

The government now submits as proper for the court's consideration on this motion, under authority of United States v. Trollinger (C.C.A.Fourth Circuit, Jan. 6, 1936) 81 F.(2d) 167, that plaintiff's claim for automatic insurance is in the nature of a gratuity or pension, and is barred by the repeal clauses of the Economy Act of 1933 (38 U.S.C.A. §§ 717, 718).

This court is not entirely convinced that Judge Parker's opinion in United States v. Trollinger would justify consideration of this point on motion in arrest of judgment. The record shows that government counsel have limited the issue on trial solely to legitimacy of claimant, and there is no suggestion of any after discovery as in the Trollinger Case.

■ However, I am satisfied, from full consideration of the war risk insurance enactments, the Economy Act, and of the decision of the Supreme Court in Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434, relied upon to sustain the motion on this point, that it cannot prevail, and should be disposed of.

In Lynch v. United States, supra, policies of yearly renewable term insurance issued under the War Risk Insurance Act are held to be, not gratuities, but contracts of the United States, and as such cannot be invalidated by subsequent acts of Congress.

Did Jake Jackson, the soldier, have a contract with the United States for benefits to accrue to his son, Ben B. Jackson, which the son may now enforce? He had no policy issued to him in fact, as presumably the plaintiff in the Lynch case had. If he had a contract, how was it created?

The War Risk Insurance Act of 1917, by article 4 (40 Stat. 409), § 400, expressly providing "greater protection for themselves [enlisted men] and their dependents," provides for the issuance, upon application and without medical examination, of "insurance against death or permanent disability" in stated multiples. Section 401 limits the time within which application may be made for "such insurance," with the further provision: "Any person in the active service on or after the sixth day of April, nineteen hundred and seventeen, who, while in such service and before the expiration of one hundred and twenty days from and after such publication, becomes or has become totally and permanently disabled or dies, or has died, without having applied for insurance, shall be deemed to have applied for and to have been granted insurance, payable to such person during his life in monthly installments of $25 each. If he shall die either before he shall have received any of such monthly installments or before he shall have received two hundred and forty of such monthly installments, then $25 per month shall be paid to his wife from the time of his death and during her widowhood, or to his child, or widowed mother if and while they survive him: Provided, however, That not more than two hundred and forty of such monthly installments, including those received by such person during his total and permanent disability, shall be so paid; and in that event the amount of the monthly installments shall be apportioned between them as may be provided by regulations."

Jackson, the soldier, was drafted into the service on the 27th day of April, 1918, and died on the 11th day of May, 1918. Under the provisions of section 401, having died in the service before the expiration of 120 days without having applied for insurance, he, by the express terms of the act, is "deemed to have applied for *and to have been granted insurance*," payable by a limited number of monthly installments to his child (the mother having also died), if the child be

alive for the number of months designated. United States v. Carlson (C.C.A.) 44 F.(2d) 5, 9; Cunningham v. United States (C.C.A.) 67 F.(2d) 714.

If the act under which this right accrued was dealing with gratuities or pensions, it does not say so. Article 4 of the War Risk Insurance Act of. 1917 is headed "Insurance." The claim here is based upon "insurance deemed to have been applied for and granted," and claimant, otherwise entitled, "is to be regarded and dealt with as though he were an actual policyholder under that act." United States v. Carlson, supra.

It was also pointed out in argument that benefits accrued and allowed under section 401 before the passage of the Economy Act of 1933 (48 Stat. 8) have not been construed by the Bureau as withdrawn and are now being paid to such claimants.

Motion denied.