**MORAGNE et al. v. UNITED STATES.**
No. 1879.

District Court, W. D. South Carolina.
March 27, 1936.

W. K. Charles and Mays & Featherstone, all of Greenwood, S. C., for plaintiffs.

O. H. Doyle and E. P. Riley, Asst. U. S. Attys., both of Greenville, S. C., for the United States.

WATKINS, District Judge.

This case came up for trial before me, a jury having been waived, on March 17, 1936, on the pleadings and a stipulation of facts with certain reservations which will be hereinafter noted.

The amended complaint on which the case was heard, exclusive of the seventh paragraph thereof, sets out a cause of action for benefits under two contracts of war risk term insurance in amounts aggregating $10,000, based on an allegation that the insured became totally and permanently disabled on or before his discharge from the army on February 27, 1919. The two contracts are affected in the same manner by the legal issues raised in this case.

The seventh paragraph of the amended complaint is to the effect that if it be shown that the insured was not totally and permanently disabled from the time of his discharge, as alleged, that his insurance was reinstated and matured on a later date under the provisions of section 305, World War Veterans' Act 1924, as amended, 38 U.S.C.A. § 516. The defendant took the position that the seventh paragraph states a second cause of action separate and distinct from that set out in other parts of the amended complaint, and moved to strike the seventh paragraph on the ground that there was no "disagreement" as to the cause of action therein set out such as is necessary to confer jurisdiction on the court.

It is not necessary to decide whether or not the seventh paragraph states a sep-

arate cause of action, or whether it merely enlarges the cause of action otherwise stated. I find that in either event the "claim" and denial by the Insurance Claims Council are broad enough to constitute a "disagreement."

The statute defining the terms "claim" and "disagreement," section 4, Act of July 3, 1930, 46 Stat. 992, 38 U.S.C.A. § 445, is as follows: "The term 'claim,' as used in this section, means any writing which *alleges permanent and total disability at a time when the contract of insurance was in force,* or which uses words showing an intention to claim insurance benefits, and the term 'disagreement' means a denial of the claim by the Administrator of Veterans' Affairs or some one acting in his name on an appeal to the Administrator." (Italics added.)

The "claim" is embodied in letters of the respective plaintiffs to the Administrator of Veterans Affairs attached as Exhibits A and B to the stipulation of facts, each demanding payment of insurance benefits on the ground that the insured was totally and permanently disabled "from the time of his discharge from the Army." Letters to the plaintiffs from the Director of Insurance admitted in evidence by agreement advised plaintiffs that the Insurance Claims Council had rendered a decision to the effect that the evidence was not sufficient to establish as a fact that the insured was totally and permanently disabled "at a time when the contract of insurance was in force." The claim of total and permanent disability from the time of discharge asserted a permanent condition and necessarily included the subsequent date on which the insurance is alleged to have been reinstated and matured by section 305. The decision of the Insurance Claims Council that the insured was not totally and permanently disabled "at a time when the contract of insurance was in force" was a denial of the claim and constitutes the "disagreement." The same conclusion is reached on very similar facts in United States v. Alberty (C.C.A.10) 63 F.(2d) 965 and Straw v. United States (C.C.A.9) 62 F.(2d) 757, 759.

The motion to strike was, therefore, overruled. The defendant excepted and exceptions were allowed.

On the call of the case for trial on the merits, it was agreed between attorneys for the parties that the stipulation of facts was intended to cover only the issues raised in the so-called second cause of action, that is, that the insurance was reinstated and matured under the provisions of said section 305, and that plaintiffs are entitled to benefits calculated from June 30, 1921, the date on which the insured is admitted by the stipulation to have been totally and permanently disabled; and that the attorneys for plaintiffs in agreeing to the stipulation reserved the right to introduce evidence on the issues arising out of the so-called first cause of action, that is, that the insured was totally and permanently disabled from February 27, 1919, the date of discharge. The attorneys for the plaintiffs were not ready to introduce such evidence at this hearing, but agreed to go to trial on the second cause of action on the stipulation of facts, reserving the right in the event of an adverse decision to be permitted thereafter to present evidence on the other issues. The case was heard subject to this reservation.

The stipulations show that the insured was discharged from the army on February 27, 1919; that premiums on the contracts of insurance were paid to include the month of March, 1919; and that on October 7, 1921, the United States Veterans' Bureau gave to the insured a rating for disability compensation purposes of disabilities disabling to the degree of 10 per cent. from date of discharge. This compensation at that time was unpaid and was sufficient in amount to pay his past due insurance premiums. This state of facts clearly makes out a case for the plaintiffs provided section 305, World War Veterans' Act 1924, as amended, is still in force. Pertinent parts of that section are as follows: "Where any person has, prior to June 7, 1924, allowed his insurance to lapse, or has canceled or reduced all or any part of such insurance, while suffering from a compensable disability for which compensation was not collected and dies or has died, or becomes or has become permanently and totally disabled and at the time of such death or permanent total disability was or is entitled to compensation remaining uncollected, then and in that event so much of his insurance as said uncollected compensation, computed in all cases at the rate provided by section 302 of the War Risk Insurance Act as amended December 24, 1919, chapter 16, Forty-first Statutes, page 371,

would purchase if applied as premiums when due, shall not be considered as lapsed, canceled or reduced; and the Veterans' Administration is hereby authorized and directed to pay to said soldier, or his beneficiaries, as the case may be, the amount of said insurance less the unpaid premiums and interest thereon at 5 per centum per annum compounded annually in installments as provided by law."

■ The defendant asserts that this section was repealed by section 17, title 1 of the Act of March 20, 1933, 38 U.S.C.A. § 717, known as the Economy Act. Pertinent parts of that section are as follows: "All public laws granting medical or hospital treatment, domiciliary care, compensation and other allowances, pension, disability allowance, or retirement pay to veterans * * * are hereby repealed, and all laws granting or pertaining to yearly renewable term insurance are hereby repealed."

In Lynch v. United States (Wilner v. United States), 292 U.S. 571, 54 S.Ct. 840, 842, 78 L.Ed. 1434 the Supreme Court held:

"War Risk Insurance policies are contracts of the United States. * * * although not entered into for gain, are legal obligations of the same dignity as other contracts of the United States and possess the same legal incidents. * * *

"The terms of these contracts are to be found in part in the policy, in part in the statutes under which they are issued and the regulations promulgated thereunder. * * *

* * * "no power to curtail the amount of the benefits which Congress contracted to pay was reserved to Congress. * * *

"The Fifth Amendment commands that property be not taken without making just compensation. Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States. Rights against the United States arising out of a contract with it are protected by the Fifth Amendment."

Under the compulsion of these cases the defendant concedes that the attempt of Congress to destroy the rights of veterans and their beneficiaries under their contracts of war risk term insurance was ineffectual in so far as it applied to those contracts on which premiums were paid by the veteran from month to month as same became due; but asserts that contracts of insurance depending on section 305, World War Veterans' Act 1924, as amended, for their present validity are not protected by the Constitution for the reason that unpaid compensation on which those contracts depend for payment of premiums is a gratuity which may be withdrawn and which was withdrawn by the Economy Act.

An award of compensation is undoubtedly a gratuity, but it does not follow that the reinstatement and maturity of contracts of veterans' insurance through the provisions of section 305 are a gratuity. This action by Congress has more of the elements of an act of simple justice to the veterans whose policies had been lapsed at a time when the government should have been paying them sufficient compensation to have kept the policies in force.

■ The passage of section 305 constituted a modification of the insurance law rather than of the compensation law. The compensation awarded to this veteran on October 7, 1921, was due to have been paid and presumably was paid on or shortly after that date. Section 305, which was passed in 1924, did not change the compensation status. It merely provided that under certain circumstances which fit the case at bar that insurance previously considered as lapsed should be reinstated, matured, and paid, *less the amount of the past due premiums*. The premiums, therefore, were paid and with interest by charging same against the policy.

This modification of the insurance law is in line with the original conception of veterans' insurance. The elements of the contract are set out by the Supreme Court in White v. United States, 270 U.S. 175, 180, 46 S.Ct. 274, 275, 70 L.Ed. 530, 538, as follows: "The certificate of insurance provided in terms that it should be 'subject in all respects to the provision of such Act (of 1917), of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under authority of the Act, shall constitute the contract.' These words must be taken to embrace changes in the law no less than changes in the regulations."

■ To the foregoing is added the limitation that vested rights under such con-

tracts may not be disturbed as stated by the Supreme Court in the Lynch and Wilner Cases, 292 U.S. 571, 578, 54 S.Ct. 840, 842, 78 L.Ed. 1434, 1440, as follows: "Moreover, from time to time, privileges granted were voluntarily enlarged and new ones were given by the government. But no power to curtail the amount of the benefits which Congress contracted to pay was reserved to Congress; and none could be given by any regulation promulgated by the Administrator."

Even if it be considered that the claims of the plaintiffs are dependent in part on compensation, it does not appear that the repeal of the laws granting compensation by the Economy Act can affect these claims. Congress by the Economy Act did not attempt to recoup compensation already paid. If such had been attempted, it would have been in derogation of the Fifth Amendment. A pure gift or gratuity becomes a vested property right when fully executed. Any compensation allowance on which plaintiffs rely to support their claim became vested immediately upon passage of the World War Veterans' Act in 1924. Such claims have been due and payable continuously since that time, and could not now be defeated by Act of Congress.

The reinstatement of the insurance by section 305 is automatic, requiring no action either by the United States Veterans' Bureau or by the veteran. If any affirmative action by the veteran or his beneficiary was needed, that was supplied by the "claim" letters attached to the stipulation. This construction is in conformity with the opinion of Acting Attorney General William D. Mitchell in his letter to the Director of the Veterans' Bureau dated January 22, 1927, reported in 35 Op.Attys. Gen. 241, 243, 244 and quoted with approval by Judge McDermott in United States v. Hendrickson (C.C.A.) 53 F.(2d) 797, 800, as follows: "It is not the decision of the director which revives the insurance, but the occurrence of the events prescribed in the statute. * * * but the stronger reasons support the conclusion that the revival takes place within the meaning of the proviso automatically when the events prescribed in the statute have occurred. * * * I agree with the conclusion of the general counsel of

the bureau that the revival takes place upon the occurrence of the death or the permanent and total disability and not when the director decides that the insurance is again in effect or pays the first installment."

I, therefore, specifically find as follows:

I. That the court has jurisdiction of this case.

II. That section 305 of the World War Veterans' Act 1924, as amended, is applicable to the stipulation of facts in this case.

III. That the plaintiff, Emily Moragne, is entitled to a judgment against the defendant in the sum of $22.56⅘ per month for a total of 62 monthly installments covering the period from January 30, 1931, to and including the installment due on February 29, 1936, totaling the sum of $1,399.20, less attorneys' fees as hereinafter provided.

IV. That the plaintiff, J. Arch Talbert, as administrator of the estate of Lester Moragne, deceased, is entitled to a judgment against the defendant in the sum of $56.42 per month for a total of 115 monthly installments covering the period from June 30, 1921, the date on which the veteran became totally and permanently disabled, to and including the installment due on December 30, 1930, the last installment date prior to the death of the veteran on January 4, 1931, totaling the sum of $6,488.30; and in addition thereto to the sum of $3,561, representing the commuted value of the 125 remaining unpaid installments under the $6,000 contract of war risk insurance, for which Jordan P. Moragne, who predeceased the veteran, was designated as beneficiary, making a total of $10,049.30, less attorneys' fees as hereinafter provided.

V. That W. K. Charles, Esq., and Messrs. Mays & Featherstone, as attorneys for the plaintiffs, are entitled to 10 per cent. of all payments made by reason of these judgments as an attorneys' fee for the prosecution of this action, divisible in equal shares between the two firms, same to be paid as provided by the World War Veterans' Act, as amended.

To all of which the defendant excepts, and exceptions are allowed by the court.