### RADIO-TELEVISION TRAINING ASSOCIATION, Inc.

v.

### UNITED STATES.

No. 474-56.

United States Court of Claims.
July 16, 1958.

---

[1] "§ 734. * * * (b) *Circumstances of adjustment.*—

"(1) If—

I. H. Wachtel, New York City, for the plaintiff.

David Orlikoff, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for the defendant. Miriam G. Cedarbaum, New York City, was on the brief.

JONES, Chief Judge.

The petitioner brings this action for recovery of allowances allegedly due from the Administrator of Veterans' Af-

fairs under the provision of § 265(b) of the Veterans' Readjustment Assistance Act of 1952, 38 U.S.C.A. § 975(b).

Whether the plaintiff is so entitled to recover is a question of law. Consequently, both parties have filed motions for summary judgment. Should plaintiff be sustained on its claimed right of recovery, the exact amount of allowances due will be determined pursuant to rule 38(c) of this court, 28 U.S.C.A.

The plaintiff corporation conducts and operates a correspondence school in New York State. Subsequent to the enactment of the Veterans' Readjustment Assistance Act of 1952, c. 875, § 101 et seq., 66 Stat. 663, 38 U.S.C.A. § 901 et seq. (hereinafter referred to as the "Act"), plaintiff obtained the necessary

approval of its courses for the education and training of veterans of the Korean War as provided for in the Act.[1] Accordingly, plaintiff is an educational institution within the meaning of § 201 (6) of the Act.[2]

Sometime after August 20, 1952, the plaintiff has had enrolled among its students veterans who are eligible for the benefits provided under the Act, and who have been furnished approved courses by the plaintiff. As is required under §§ 231(c) (2) and 232(e) of the Act,[3] the plaintiff has submitted to the Administrator of Veterans' Affairs certifications as to the number of lessons completed by the veterans and serviced by the school. In addition, the plaintiff has furnished to the Administrator neces-

---

1. Passed on July 16, 1952, the policy considerations underlying the enactment of the Veterans' Readjustment Assistance Act of 1952 are summarized in the Act as follows:

   "Title I—Short Title And Statement Of Policy

   \* \* \* \* \* \* \*

   "Statement Of Policy

   "Sec. 102 [38 U.S.C.A. § 901]. The Congress of the United States hereby declares that the veterans' education and training program created by this Act is for the purpose of providing vocational readjustment and restoring lost educational opportunities to those service men and women whose educational or vocational ambitions have been interrupted or impeded by reason of active service in the Armed Forces during a period of national emergency and for the purpose of aiding such persons in attaining the educational and training status which they might normally have aspired to and obtained had they not served their country; \* \* \*."

2. "Title II—Educational And Vocational Assistance

   "Part I—Definitions

   "Sec. 201 [38 U.S.C.A. § 911]. For the purposes of this title—

   \* \* \* \* \* \* \*

   "(6) the term 'educational institution' means any public or private elementary school, secondary school, vocational school, correspondence school, business school, junior college, teachers college, college, normal school, professional school, university, scientific or technical institu-

tion, or other institution furnishing education for adults;" [Emphasis added.]

3. "Part IV—Payments To Veterans

   "Education and Training Allowance

   "Sec. 231 \* \* \* (c) (2) [38 U.S.C. A. § 941(c) (2)]. No education and training allowance shall be paid to an eligible veteran for any period until the Administrator shall have received—

   \* \* \* \* \* \* \*

   "(2) from the educational institution or training establishment, a certification, or an endorsement on the veteran's certificate, that such veteran was enrolled in and pursuing a course of education or training during such period, and, in the case of an institution furnishing education or training to a veteran exclusively by correspondence, a certification, or an endorsement on the veteran's certificate, as to the number of lessons completed by the veteran and serviced by the institution.

   \* \* \* \* \* \* \*

   "Computation Of Education And Training Allowances

   "Sec. 232 \* \* \* (e) [38 U.S.C.A. § 942(e)]. The education and training allowance of an eligible veteran pursuing a program of education or training exclusively by correspondence shall be computed on the basis of the established charge which the institution requires nonveterans to pay for the course or courses pursued by the eligible veteran. Such allowance shall be paid quarterly on a pro rata basis for the lessons completed by the veteran and serviced by the institution, as certified by the institution."

sary reports as to the enrollment, interruption, and termination of the education or training of each eligible veteran enrolled under the Act.[4] Furthermore, changes in programs of training have necessitated the submission of additional forms by plaintiff.[5]

To help relieve the expenses that would be incurred by educational institutions in preparing and submitting reports and certifications under the Act, Congress inserted the following language in § 265(b) [38 U.S.C.A. § 975 (b)]:[6]

"The Administrator shall pay to each educational institution which is required to submit reports and certifications to the Administrator under this title, an allowance at the rate of $1.50 per month for each eligible veteran enrolled in and attending such institution under the provisions of this title to assist the educational institution in defraying the expense of preparing and sub-mitting such reports and certifications. Such allowances shall be paid in such manner and at such times as may be prescribed by the Administrator, except that in the event any institution fails to submit reports or certifications to the Administrator as required by this title, no allowance shall be paid to such institution for the month or months during which such reports or certifications were not submitted as required by the Administrator."

On August 8, 1952, the Administrator of Veterans' Affairs by regulation, 38 CFR (1953 Supp.) § 21.2303(c) (3), provided that no administrative allowance shall be paid to an educational institution for a veteran enrolled in a course pursued exclusively by correspondence.[7]

The Administrator has denied a written request by plaintiff for payment of these allowances, and has refused to re-

---

4. "Reports By Institutions

"Sec. 265(a) [38 U.S.C.A. § 975(a)]. Educational institutions and training establishments shall, without delay, report to the Administrator in the form prescribed by him, the enrollment, interruption, and termination of the education or training of each eligible veteran enrolled therein under this title."

5. "Part III—Enrollment

\* \* \* \* \* \* \*

"Change Of Program

"Sec. 223(a) [38 U.S.C.A. § 928(a)]. Subject to the provisions of section 222, each eligible veteran (except an eligible veteran whose program has been interrupted or discontinued due to his own misconduct, his own neglect, or his own lack of application) may, at any time prior to the end of the period during which he is entitled to initiate a program of education or training under this title, make not more than one change of program of education or training."

To implement this provision of the Act, the Administrator of Veterans' Affairs requires, where an eligible veteran seeks a change of program, the submission by the educational institution of VA Form 7–1995, entitled "Request For Change of Program or Change of Place of Training". 38 CFR (1953 Supp.) § 21.-2032 (e).

6. Under the Veterans' Administration Appropriation Act of 1954, c. 241, 67 Stat. 187, 190, the monthly rate of payment for the reports and certifications was, effective September 1, 1953, reduced to $1.00 per month. A similar provision has been reenacted in each of the subsequent Veterans' Administration Appropriations Acts to date.

7. 38 CFR (1953 Supp.) § 21.2303(c) provides as follows:

"*Administrative allowance for preparation of reports and certifications.* (1) The Administrator shall pay to each educational institution which is required to submit reports and certifications to the Veterans' Administration under Public Law 550, 82d Congress, an allowance at the rate of $1.50 per month for each eligible veteran enrolled in and attending such institution to assist the educational institution in defraying the expense of preparing and submitting such reports and certifications.

"(2) The amount of such allowance to be paid each eligible institution shall be computed on the basis of $1.50 for each required certification of training actually received by the Veterans' Administration during the reporting period.

"(3) No administrative allowance shall be paid to an educational institution for a veteran enrolled in a course pursued exclusively by correspondence."

consider his denial of plaintiff's claim. Certification of payment of this claim has also been refused by the Comptroller General.

The plaintiff in this action challenges the validity of the regulation promulgated by the Administrator denying payment of administrative allowances to correspondence schools as being inconsistent with the provisions of the Act.[8] It is contended by plaintiff that the Act expressly requires that the Administrator shall pay each educational institution such allowances; it neither expressly nor impliedly excludes correspondence schools from the category of institutions entitled to these payments.

In support of its motion for summary judgment, and in opposition to plaintiff's motion, the Government advances two arguments. First, plaintiff's suit is one to review a decision of the Administrator of Veterans' Affairs on a claim for payments under a statute administered by the Veterans Administration and is therefore an unconsented suit against the United States which must be dismissed. Secondly, the challenged regulation properly reflects the clearly-expressed intention of Congress and therefore the defendant is entitled to judgment.

The Government urges that the case be disposed of under the first issue on the strength of section 11 of the Act of October 17, 1940, 54 Stat. 1197, 38 U.S. C.A. § 11a–2, which provides:

"Notwithstanding any other provisions of law, except as provided in section 19 of the World War Veterans' Act, 1924, as amended, and in section 817 of the National Service Life Insurance Act of 1940, the decisions of the Administrator of Veterans' Affairs on any question of law or fact concerning a claim for benefits or payments under this or any other Act administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decisions."

Assuming the applicability of section 11 to the instant claim, the fact that plaintiff here questions a regulation of the Administrator, rather than a particular decision, would not except its claim from the effect of section 11. Slocumb v. Gray, 1949, 86 U.S.App.D.C. 5, 179 F.2d 31. Moreover, Congress expressly recognized the applicability of section 11 to payments under the Veterans' Readjustment Assistance Act of 1952, argues the Government, by reason of § 261(a) of that Act, 38 U.S.C.A. § 971(a):

"* * * Notwithstanding the provisions of section 11 of the Act of October 17, 1940, as amended (54 Stat. 1193), payments under this title shall be subject to audit and review by the General Accounting Office as provided by the Budget and Accounting Act of 1921, as amended, and the Budget and Accounting Procedures Act of 1950."

■■ While it is true that Congress has the power to prohibit judicial review of administrative decisions, Swift and Company v. United States, 1941, 38 F.Supp. 435, 93 Ct.Cl. 705, 710; United States v. Babcock, 1919, 250 U.S. 328, 39 S.Ct. 464, 63 L.Ed. 1011, we are of the opinion that the scope of section 11 does not include the "payments" here in dispute. That Congress intended the bar of section 11 to apply only to gratuities seems clear. The purpose of section 11 was to insure that the provisions of existing law remained in effect.[9] The status of that law had been expressed in the decision of Lynch v. United States, 1934, 292 U.S. 571, 587, 54 S.Ct. 840, 78

---

8. In pertinent part, § 261(a) [38 U.S.C. A. § 971(a)] provides as follows:

"The Administrator is authorized to prescribe, promulgate, and publish such rules and regulations as are consistent with the provisions of this title and necessary to carry out its purposes. * * *"

9. See Hearings Before a Subcommittee of the Senate Committee on Finance, 76th Cong., 3d Sess., on Bills and Acts Relating to World War Veterans' Legislation, p. 28, et seq.

L.Ed. 1434. There the Court had before it a "finality" statute similar to section 11.[10] But as the Court indicated, the "finality" provision related only to grants to veterans—pensions, compensation allowances and special privileges, all of which are gratuities.

■ In the instant case the administrative allowances provided for under § 265(b) of the Act are not in the nature of gratuities. On the contrary, they are compensation for services performed by educational institutions on behalf of the Veterans Administration pursuant to the requirements imposed by the Act. For this reason we are satisfied that petitioner's claim is not barred by section 11 of the Act of October 17, 1940, *supra,* and is therefore properly within the jurisdiction of this court.

Defendant supports the questioned validity of the regulation denying administrative allowances to correspondence schools on the basis that eligible veterans are not *attending* such institutions within the meaning of § 265(b) of the Act. In brief, the Government urges that we adopt a meaning of the word "attending" that connotes physical presence.

Though it is true, as the Government indicates, that the cost data presented to Congress bearing on the expense to educational institutions of preparing and submitting records and certifications under the Act was compiled from a study conducted at the University of Minnesota and necessarily reflected an "attendance" factor in the estimated cost figures submitted,[11] it would appear that the cost study was prompted on the belief that the reporting requirements under the Act would impose an appreciable administrative burden on *all* schools affected by the terms of the Act. The purpose of that study was to indicate to Congress the extent of the added costs imposed under the reporting requirements of the statute. It was never suggested during the course of the hearings

10. Under review was § 5 of the Economy Act of March 20, 1933, 48 Stat. 8, 9, 38 U.S.C.A. § 705, which provides:
   "All decisions rendered by the Administrator of Veterans' Affairs under the provisions of this title, or the regulations issued pursuant thereto, shall be final and conclusive on all questions of law and fact, and no other official or court of the United States shall have jurisdiction to review by mandamus or otherwise any such decision."

11. See the statement of Laurence R. Lunden, Treasurer and Comptroller of the University of Minnesota, submitted to House Committee on Veterans' Affairs, 82d Cong., 2d Sess., March 4, 1952, pp. 1583-1589.
   Dr. Lewis Webster Jones, President of Rutgers University and representative of the Association of Land-Grant Colleges and Universities, testified at page 1629 before the same House committee on the general problem of added administrative costs to educational institutions to be imposed under the pending legislation, subscribing to the statements of Mr. Lunden that the institutions should be compensated for the services they would have to perform.
   The suggestions were ignored by the House committee, however, and H.R. 7656 was reported out favorably by the committee on May 16, 1952, H.Rept.1943, 82d Cong., 2d Sess., without provision for compensation to educational institutions for submitting reports and certifications under the Act.
   Following its passage by the House, H.R. 7656 was referred to the Senate Committee on Labor and Public Welfare. Further hearings were held by that Committee's Special Subcommittee on Veterans Education and Rehabilitation Benefits.
   Again the cost problem confronting educational institutions by reason of the reporting requirements contained in H.R. 7656 was raised. Hearings before the Special Subcommittee on Veterans Education and Rehabilitation Benefits of the Senate Committee on Labor and Public Welfare, 82d Cong., 2d Sess., June 17, 1952, pp. 182-192.
   Suggestions for payment of an administrative allowance to the institutions were given serious consideration by the Senate subcommittee, directing particular attention to the study which had been conducted by Mr. Lunden. As a result, the report of the Committee on Labor and Public Welfare, S.Rept.1824, 82d Cong., 2d Sess., recommended amendment of § 265 by the addition of a subsection (b) authorizing payment of an administrative allowance to the educational institutions.

on this provision of the Act that correspondence schools, since they did not have students in *attendance,* would not incur added expenses under the Act, or should be treated differently in this respect than other educational institutions. As a result, recommendations on this matter by the Special Subcommittee on Veterans' Education and Rehabilitation, which had conducted hearings on the then pending legislation (H.R. 7656), were reflected in the report of the full Committee on Labor and Public Welfare, S.Rept.1824, 82d Cong., 2d Sess., filed June 25, 1952. Specifically, the committee recommended that § 265 of H.R. 7656 be amended to insert a subsection (b) providing as follows:

"(b) The Administrator shall pay to each educational institution, which is required to submit reports and certifications to the Administrator under this title, an allowance for each full-time eligible veteran or the prorata part thereof for each part-time eligible veteran to assist the educational institution in defraying the expense of preparing and submitting such reports and certifications. The amount of such allowance for each such eligible veteran shall be determined by the Administrator but shall be uniform with respect to all educational institutions. Such allowance shall be paid in such manner and at such times as may be prescribed by the Administrator, except that in the event any institution fails to submit reports or certifications to the Administrator as required by this title, no allowance shall be paid to such institution for the month or months during which such reports or certifications were not submitted as required by the Administrator."

Commenting on the suggested addition, the Senate committee explained its purpose at p. 10 as follows:

"§ 265(b): The committee approved the addition of a new subsection (b), whereby the Administrator must pay to each educational institution which is required to submit reports and certifications to the Administrator a uniform allowance to be determined by the Administrator for the purpose of assisting such educational institution in defraying the additional expense of preparing and submitting such reports and certifications. It was pointed out to the committee that every educational institution would necessarily incur additional administrative costs arising out of the keeping of separate records for veteran students and that it was obviously unfair to impose this obligation upon these institutions without some compensation."

House and Senate conferees thereafter were appointed to consider the many suggested amendments to H.R. 7656. With respect to the suggested § 265(b), House Conference Report 2481, 82d Cong., 2d Sess., incorporated changes which are presently reflected in that provision. By way of explanation, the conference report at p. 15 contained the following:

"The Senate bill authorized the Administrator to pay educational institutions which are required to submit certain reports and certifications an allowance for each full-time eligible veteran or a pro-rated part thereof for a part-time veteran. No such provision was in the House bill. The conference agreement provides for a payment to the educational institution of $1.50 per month for each eligible veteran enrolled in and attending such institution, to be made in such manner and at such time as the Administrator may prescribe."

Counsel for both parties have been unable to provide us with any additional congressional comment as to the reasons underlying the changes in language of the Senate proposed § 265(b). However, the legislative history of the provision as presented is more than adequate to arrive at a determination of the issue before us.

Hearings before committees concerned with the Veterans' Readjustment Assistance Act of 1952 as enacted, debate on the floor of Congress,[12] and the language of the Act itself, indicate that Congress did not intend to distinguish between correspondence schools and other educational institutions insofar as authorizing an allowance for expenses incurred in submitting reports and certifications under the Act. We cannot presume to draw that intent in the absence of congressional expression to that effect. What we are now asked to do by the Government, in essence discriminate against correspondence schools, would have provoked congressional comment, if not debate, at the time the legislation was pending. But the history of the Act indicates that such did not occur. Congress' only concern in enacting § 265(b) was to assist in defraying expenses incurred by educational institutions under the Act. Moreover, the language of that section clearly indicates that such was the concern of Congress.

■ As § 265(b) initially spells out: "The Administrator shall pay to each educational institution which is required to submit reports and certifications to the Administrator under this title, an allowance * * *." Unquestionably, plaintiff is an "educational institution" within the meaning of the Act.♦ See § 201(6). Likewise, under the Act plaintiff "is required to submit reports and certifications to the Administrator". See §§ 231(c) (2), 232(e), and 265(a). So expressed, we feel that § 265(b) directs payment of the allowance to correspondence schools as well as other educational institutions. To say that the insertion of the word "attending" limits the applicability of the section to institutions wherein students are physically present attaches unwarranted significance to the word and completely ignores the purpose giving rise to the provision. Had Congress' intent been as suggested by the Government, it would have had

no more difficulty in expressing a clear distinction between correspondence schools and other institutions under § 265(b) than it did in §§ 231(b) and (c) and 232. Appropriate to the Government's argument in this case are remarks made by the Supreme Court in Rhodes v. State of Iowa, 1898, 170 U.S. 412, 422, 18 S.Ct. 664, 667, 42 L.Ed. 1088:

"But the subtle signification of words and the niceties of verbal distinction furnish no safe guide for construing the act of congress. On the contrary, it should be interpreted and enforced by the light of the fundamental rule of carrying out its purpose and object, of affording the remedy which it was intended to create, and of defeating the wrong which it was its purpose to frustrate. * * *"

Thus, consideration of the words alone of a particular statute is not always enough. Their context, the purposes of the law, and the circumstances under which the words were employed must frequently be considered. People of Puerto Rico v. Shell Co., 1937, 302 U.S. 253, 258, 58 S.Ct. 167, 82 L.Ed. 235.

■ With this in mind, we are satisfied that Congress in using the word "attending" in § 265(b) of the Veterans' Readjustment Assistance Act of 1952 did not intend to limit its scope to those institutions requiring the physical presence of their students, but instead intended the more comprehensive meaning that would be conveyed by the phrase: "each eligible veteran enrolled in and *pursuing a program of* such institution."

For the above reasons, we conclude that the Veterans Administration regulation, 38 CFR § 21.2303(c) (3), which provides that no administrative allowance for the preparation and submission of reports and certifications shall be paid to an educational institution for a veteran enrolled in a course pursued exclu-

---

12. See the statements of Representative Olin Teague in explanation of § 265(b) delivered on the floor of the House and the ensuing debate. 98 Cong.Rec. (Part 7) p. 9397.

sively by correspondence is invalid as being inconsistent with § 265(b) of the Veterans' Readjustment Assistance Act of 1952.

Furthermore, in determining the amount owing to plaintiff, the allowance of $1.50, reduced to $1.00 effective September 1, 1953, shall be allowed the plaintiff only for those months in which a report or certification required under the Act was submitted for an eligible veteran and received by the Veterans Administration. This basis for recovery is in harmony with the Act itself, §§ 265 (a) and (b), 231(c) (2), and 232(e), and § 21.2303(c) (2) of the regulations promulgated by the Administrator.

Plaintiff's motion for summary judgment is granted, and defendant's motion is denied. Judgment will be entered to that effect. The amount of recovery will be determined pursuant to rule 38(c) of the Rules of this court.

It is so ordered.

LARAMORE, MADDEN, WHITAKER, and LITTLETON, JJ., concur.