## CAPRIO v. UNITED STATES.
### No. 2450.

Circuit Court of Appeals, First Circuit.
Nov. 26, 1930.

Leo M. Harlow, of Boston, Mass., for appellant.

John Laurence Hurley, Sp. Asst. to U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., and William J. Hession, Regional Atty., U. S. Veterans' Bureau, both of Boston, Mass., on the brief), for the United States.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

This is an action to recover automatic insurance, so called, under section 401 of the War Risk Insurance Act of October 6, 1917, 40 Stat. 409, which, so far as now material, reads as follows:

"Any person in the active service on or after the sixth day of April, nineteen hundred and seventeen, who, while in such service and before the expiration of one hundred and twenty days from and after such publication, becomes or has become totally and permanently disabled or dies, or has died, without having applied for insurance, shall be deemed to have applied for and to have been granted insurance, payable to such person during his life in monthly installments of $25 each."

The suit was tried by the court, a jury being duly waived in writing. The court found as facts that Caprio was a resident of Massachusetts, and that the New England Trust Company of Boston was duly appointed his legal guardian on September 23, 1920; the court also found, as requested by the plaintiff, facts as follows:

"(a) The plaintiff entered into the military service of the United States June 5, 1917;

"(b) The plaintiff was definitely assigned to a military organization, to wit: Troop A., 20th Regiment Cavalry, United States Army, as a Private;

"(c) The plaintiff was discharged from the United States Army;

"(d) The employment of the plaintiff in the military service of the United States was between the 6th day of April, 1917, and the 11th day of November, 1918.

"(e) The plaintiff at the time of his discharge from the service of the United States, and from that day to the present, was, and is, unable to continuously follow a substantially gainful employment;

"(f) The plaintiff, from July 28, 1917, to date, has been permanently and totally disabled within the meaning of the War Risk Insurance Act;

"(g) The plaintiff, from the time of his entrance into active service to discharge, was employed in the military service of the United States less than 120 days."

The court refused to give the plaintiff's third requested ruling of law, that "plaintiff was actually employed in the active military service of the United States"; but found that on June 5, 1917, the date of his enlistment, he was insane, and said:

"In my opinion it is a condition precedent to the right of recovery under War Risk Insurance that the applicant must be capable of service. In the present case the applicant was mentally incapable of performing service."

The record also shows that on June 3, 1917, when the plaintiff was passed for enlistment, the medical examiner, acting for the United States, executed the following certificate:

"I certify that I have carefully examined the applicant and have correctly recorded the results of the examination, and that, to the best of my judgment and belief, he has no mental or physical defect disqualifying him from service in the United States Army."

Under date of June 19, 1920, James V. May, then superintendent of the Boston State Hospital, certified to the Bureau of War Risk Insurance as follows:

"This is to certify that Domenico Caprio, No. 15341, following his service in the United States Army, has been under care in the Boston State Hospital from August 24, 1917 to date. Diagnosis—Dementia Praecox. In our opinion his mental disease was probably *aggravated by his service in the United States Army.*"

The government makes two main contentions: (1) That Caprio was not legally enlisted in the active service of the United States; and (2) did not become permanently and totally disabled while in active service.

This amounts to saying that the court's conclusive finding of fact, that when he undertook to enlist Caprio was insane and therefore incapable of making a contract, made his enlistment null and void. Compare In re Grimley, 137 U. S. 147, 11 S. Ct. 54, 55, 34 L. Ed. 636, in which it is held that "enlistment is a contract, but it is one of those contracts which changes the status." Reliance is also placed under Rev. St. § 1118, 10 USCA § 622, providing that no insane person shall be enlisted or mustered into military service.

Plaintiff relies on the statutory presumption under section 200 of the World War Veterans' Act of 1924, 43 Stat. 615 reading, as amended by Act of July 2, 1926, 44 Stat. 793 (38 USCA § 471), as follows:

"For the purposes of this section every such officer, enlisted man, or other member employed in the active service under the War Department or Navy Department who was discharged or who resigned prior to July 2, 1921, and every such officer, enlisted man, or other member employed in the active service under the War Department or Navy Department on or before November 11, 1918, who on or after July 2, 1921, is discharged or resigns, *shall be conclusively held and taken to have been in sound condition when examined, accepted, and enrolled for service,* except as to defects, disorders, or infirmities made of record in any manner by proper authorities of the United States at the time of, or prior to, inception of active service, to the extent to which any such defect, disorder, or infirmity was so made of record." (Italics supplied.)

Parenthetically, while by section 600 of the Act of June 7, 1924, 43 Stat. 629, 630, the Act of October 6, 1917, was repealed, yet section 602 (38 USCA § 571) contained the usual saving clause, that such repeal "shall not affect any act done or any right or liability accrued, or any suit commenced before the said repeal." It follows that repeal does not affect such rights, if any, as Caprio had under the Act of October 6, 1917.

The question therefore is whether, under the amended section 200 of the Act of 1924, Caprio is to be "conclusively held and taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, disorders, or infirmities made of record," etc.

On behalf of the government it is argued, not very persuasively, that "act" in this section, as amended in 1926, really means "section." We cannot adopt that construction. As originally reading in the Act of June 7, 1924, section 200 did read that "for the purposes of this *section* every such * * * enlisted man * * * shall be conclusively held and taken to have been in sound condition when examined, accepted, and enrolled for service," etc. But by the Act of July 2, 1926, the word "section" was changed to read "Act." We think this change has significance. See Brandaw v. United States (C. C. A.) 35 F.(2d) 181; Jackson v. United States (D. C.) 24 F.(2d) 981.

It seems to us that the government is bound by the combined result of the medical examiner's certificate, that Caprio was sound and fit for military service, and the presumption provided in section 200 supra. It is obvious that the contention that the incapacity to contract with a man offering himself for enlistment might have very far-reaching and most unjust results. We think that Congress did not intend the government to be permitted to set up insanity, unascertained at the time of enlistment, and thus escape any of the responsibilities assumed towards its enlisted soldiers. It may well be that in fact a substantial number of really insane men were accepted as soldiers.

The fact that this insane man rendered no real service to the government in the few days of his nominal service seems to us to make no difference in the law applicable to his rights. That fact may lend an artificial color of injustice, in the result we reach, in this particular case. But we see no escape from the conclusion that Congress intended to safeguard all enlisted men from belated ascertainment of incapacity to render real military service to the United States. The case really turns upon a pure question of statutory construction, not upon the legal capacity of the enlisted soldier to make a valid contract of enlistment. We must hold that Caprio was conclusively presumed to be sane when he enlisted, and therefore became entitled to the benefits of the so-called automatic insurance.

This conclusion makes it unnecessary to consider whether the plaintiff might not recover under the apparently undisputed evidence of Superintendent May of the Boston State Hospital, that "in our opinion his mental disease was *probably aggravated by his service in the United States Army.*"

The judgment of the District Court is reversed and the case is remanded to that court for further proceedings not inconsistent with this opinion.