## UNITED STATES v. JACKSON.
### No. 4120.

Circuit Court of Appeals, Fourth Circuit.

April 6, 1937.

Young M. Smith, Atty., Department of Justice, of Washington, D. C., and S. Henry Edmunds, Jr., Asst. U. S. Atty., of Charleston, S. C. (Claud N. Sapp, U. S. Atty., of Columbia, S. C., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., and Wilbur C. Pickett, Sp. Asst. to Atty. Gen., on the brief), for the United States.

R. K. Wise, of Columbia, S. C., and Warren E. Miller, of Washington, D. C. (Anderson G. Ulmer and A. W. Dowell, both of Savannah, Ga., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

Ben B. Jackson, minor son and only child of a Negro veteran of the World War, brought suit through his guardian against the United States in the District Court for automatic insurance benefits of $25 per month under the terms of section 401 of the War Risk Insurance Act, as amended October 6, 1917, § 2, 40 Stat. 409. Jake Jackson, the soldier, was drafted into the Army on April 27, 1918, and died on May 11, 1918, without having applied for war risk insurance. Section 400 of the statute provides for the granting to enlisted men of insurance from $1,000 to $10,000 against death or total disability upon the payment of certain premiums; and section 401 provides that such insurance must be applied for within 120 days after enlistment, except that any person in the Government service after April 6, 1917, who becomes totally and permanently disabled, or dies, before the expiration of 120 days without having applied for insurance, "shall be deemed to have applied for and to have been granted insurance, payable to such person during his life in monthly installments of $25 each"; and that in case of death before having received any such installment then $25 per month for not more than 240 months shall be paid to his wife from his death during widowhood, or to his child or children if any survive him. See, also, section 19 of the Act of June 25, 1918, 40 Stat. 614, section 12 of the Act of December 24, 1919, 41 Stat. 374, and sections 600, 601, 602 of the World War Veterans' Act of June 7, 1924, 43 Stat. 629, 630 (38 U.S.C.A. § 571 and note).

The action was instituted on October 14, 1935. The defenses were (1) that the statutory provision for automatic insurance was repealed by section 17 of the Economy Act of March 20, 1933, 48 Stat. 11, 38 U. S.C.A. § 717; and (2) that there was no substantial evidence of a marriage between the parents of the child, and hence that the plaintiff had not satisfied the provisions of section 22 of the War Risk Insurance Act (40 Stat. 401), as amended, 41 Stat. 371, that the term "child" in the act includes either a legitimate child, a child legally adopted, a stepchild in the man's household, or an illegitimate child if acknowledged in writing by the father or if he has been judicially ordered to contribute to the child's support or judicially declared to be the putative father of the child. The District Judge ruled against the Government on both points, and the jury having considered the evidence bearing on the legitimacy of the child, found a verdict for the plaintiff.

The basic contention of the United States with regard to the first point is that the automatic insurance provided by the War Risk Insurance Act was a gratuitous death or disability allowance and not a contract. It is pointed out that the insured paid no premiums and received no written certificate or policy of insurance, and hence it is said that the provisions of the act come within the scope of section 17 of the Economy Act, which repealed "all public laws granting medical or hospital treatment, domiciliary care, compensation and other allowances, pension, disability allowance, or retirement pay to veterans and the dependents of veterans of the * * * World War." Thus the case is distinguished from the decision in the case of Lynch v. U. S., 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434, which held that a policy of renewable term insurance is a contract creating vested property rights, which Congress had no power to take away without compensation. Support for this position is found in Stephens v. U. S. (C.C.A.) 85 F.(2d) 570, and in the unreported decision of the District Court of Nebraska in Luther H. Dill v. United States.[1]

In our opinion, however, this position is not tenable because the intention of Congress to place automatic insurance in the same category as insurance for which application has been made seems to be clearly set out in the act. Section 401 expressly provides that any person in the active service on or after April 6, 1917, who becomes totally and permanently disabled or dies within 120 days after the publication of the terms of the insurance contract without having applied for insurance "shall be deemed to have applied for and to have been granted insurance." This language occurs not only in section 401 in the Act of October 6, 1917, 40 Stat. 409, and in section 19 of the Act of June 25, 1918, 40 Stat. 614, but it remained as a part of the War Risk Insurance Act through all the amendatory legislation; and although the act was repealed in principal part by sections 600, 601 of the World War Veterans' Act of June 7, 1924, 43 Stat. 629 (38 U.S.C.A. § 571 and note), section 602 of that act (38 U.S.C.A. § 571 note) provided that the repeal should not affect any act done or any right or liability accrued before the repeal, but all such rights and liabilities should continue and be enforced in the same manner as if the repeal had not been made.

It is obvious that Congress chose to consider the induction of the soldier into the service and his disability or death within 120 days thereafter as equivalent to an appliction for and a grant of insurance, so that a contract of insurance of equal validity to those for which applications should be made would come into existence; and since Congress accepted the military service as the basis of the contract, it is of no moment that no written document was issued to the soldier or that no premium for the brief period of 120 days was required. None of the soldiers indeed made adequate money payment for the insurance granted, since the premiums paid were much below the approved standard in view of the risks involved. See Part II of Regulations and Procedure, U. S. Veterans Bureau, p. 1255, Bulletin No. 3, Active and Obsolete Issues as of December 31, 1928.

Heretofore the courts have proceeded on this assumption in sustaining the jurisdiction of the District Courts to entertain suits based on claims for automatic insurance. The right to bring an action against the United States was granted by the provision of section 405 of the War Risk Insurance Act, as amended on October 6, 1917, § 2, 40 Stat. 410, "that in the event of disagreement as to a claim under the contract of insurance between the bureau and any beneficiary or beneficiaries

---

[1] No opinion for publication.

thereunder, an action on the claim may be brought against the United States." See, also, section 13 of the Act of May 20, 1918, 40 Stat. 555, section 19 of the Act of June 7, 1924, 43 Stat. 612. The courts have held that automatic insurance is a contract within this language and that suit may be brought thereon against the United States in the federal courts. U. S. v. Carlson (C.C.A.) 44 F.(2d) 5, Caprio v. U. S. (C.C.A.) 45 F.(2d) 520, Cunningham v. U. S. (C.C.A.) 67 F.(2d) 714.

It may well be doubted that Congress had automatic insurance in mind when by section 17 of the Economy Act it repealed all laws granting compensation, disability, and other allowances to veterans and dependents of veterans of the World War. The War Risk Insurance Act of October 6, 1917, was divided into articles, of which article II (sections 200–210) referred solely to allotments and family allowances, article III (sections 300–314) to compensation for death and disability, and article IV (sections 400–405) to insurance, including automatic insurance; and it is reasonable to assume that Congress used these terms of the Economy Act in the sense in which they had become familiar to the Veterans' Bureau and to the public generally. And if it be supposed that the provision of the Economy Act which repealed all laws pertaining to yearly renewable insurance includes automatic insurance within its scope, we are met by the decision in Lynch v. United States, supra, that this object was beyond the power of Congress to attain. We conclude that the Government's first defense in the pending case cannot be sustained. We reached a similar result with regard to the lack of congressional power to withdraw the privilege of applying unpaid compensation to the revival of a policy of insurance lapsed for non-payment of premiums in U. S. v. Weaver (C.C.A.) 86 F.(2d) 372.

■ The remaining question is whether there was sufficient evidence of a common-law marriage between the parents of the child to justify the submission of this issue to the jury. Both parents died shortly after the father's entry into the military service. There was no evidence of a wedding ceremony, but there was evidence tending to show that the couple lived together as man and wife. For a term of five years before the war the man was working in a railroad gang who lived in cars at the scene of their labors during the week but generally returned to their homes at week-ends. The father of the child spent practically all of his free time during these years at the home of the mother, which was situated a hundred yards or more from the house where he had previously lived with his sisters. No other man kept company with her during this period. Two children were born to the couple, a girl who lived only a few months, and a boy, the plaintiff, who was born eight months before the soldier was drafted. There was also evidence tending to show that the man supported the family, acknowledged the children as his own, and that the couple were known by general reputation in the community as man and wife.

On the other hand, doubt was thrown upon the character of the relationship between them by other evidence in the case. On at least once occasion the man, on returning to the settlement on Saturday evening, put his luggage in his sisters' house and then went to the house of the mother of the child. The woman, although living openly with him, retained her maiden name, and she threatened to force him to marry her when she was with child. When drafted the verteran claimed exemption because of dependent sisters and not because of a dependent wife and child. When he was taken to the hospital suffering with pneumonia, he named a sister as his closest relative, and directed that she be notified if he should die.

Notwithstanding this conflict, there was enough evidence to submit the question of marriage to the jury. In Tedder v. Tedder, 108 S.C. 271, 94 S.E. 19, 2 A.L.R. 438, the Supreme Court of South Carolina recognized the validity of a common-law marriage in that state and held that the difference between marriage and concubinage, in circumstances such as these, rests in the intent of the cohabiting parties which may be evidenced by a public declaration or inferred from their actions. There was substantial evidence in the pending case from which the intent of marriage might be inferred, and the issue was properly left to the decision of the jury.

■ Furthermore, the plaintiff was entitled to the benefit of the provisions of section 22 of the War Risk Insurance Act of October 6, 1917, 40 Stat. 401, whereby the provisions of R.S. § 4705, 38 U.S.C.A. § 198, were made applicable in the proof of marriages in compensation and insurance cases, with the result that a marriage

is deemed to have existed under circumstances like those prevailing in this case without other evidence that the parties habitually recognized each other as man and wife and were so recognized by their neighbors, and lived together as such up to the date of enlistment.

Affirmed.