## CAMPBELL v. UNITED STATES.
### Civ. A. No. 150.

District Court, E. D. South Carolina, Columbia Division.

Jan. 6, 1943.

R. K. Wise, of Wise & Whaley, of Columbia, S. C., for plaintiff.

C. N. Sapp, U. S. Atty., and H. H. Edens, Asst. U. S. Atty., both of Columbia, S. C., and Wm. T. Becker, of Washington, D. C., for defendant.

TIMMERMAN, District Judge.

This is a suit by Mary Ann Campbell, daughter of Herbert Campbell, a deceased soldier, to collect from the Government what is commonly termed automatic insurance of $25 per month from October 27, 1918, to February 26, 1930, under Section 401 of the War Risk Insurance Act of October 6, 1917, 40 Stat. 409.

The insurance installments sued for were paid by the Government, during the period in question, to Mary Ann Miller, the mother of the deceased.

"The facts, as stipulated, are that Herbert Campbell was inducted into the military service of the United States on July 18, 1918; that he never applied for yearly

renewable term insurance; that he died on October 27, 1918, while in the military service and within 120 days of the date of his induction.

"At the time of his induction into the military service, Herbert Campbell stated in writing that he was single; that he had no dependents, and gave the name of his mother, Mary Ann Miller, as the person to be notified in case of emergency. On October 15, 1918, upon entry in a hospital, he stated that his mother, Mary Ann Miller, was his nearest relative.

"In a statement dated May 21, 1919, Mary Ann Miller stated that Herbert Campbell had no widow or children. In an application for dependency compensation dated June 5, 1919, she stated that Herbert Campbell was single and had no children and in her claim for automatic insurance benefits executed March 26, 1923, and filed in the Veterans Bureau on March 29, 1923, she stated that Herbert Campbell was not survived by a widow and that he had no children. * * *, the Veterans Bureau on April 16, 1923, awarded Mary Ann Miller automatic insurance benefits in the sum of $25 per month, commencing October 27, 1918, under the provisions of Section 401, War Risk Insurance Act, as amended June 25, 1918 (c. 104, 40 Stat. 614).

"In an application for dependency compensation, Veterans Bureau Form 527 dated February 12, 1929, Annie Sanders as guardian of Mary Ann Campbell alleged that Mary Ann Campbell was the daughter of Herbert Campbell. This was the first information submitted to the Veterans Bureau that Herbert Campbell was ever married or survived by a daughter, or anyone other than his mother. * * * the $25 per month award of automatic insurance benefits to Mary Ann Miller was discontinued effective February 26, 1930. On April 9, 1930, Mary Ann Campbell by her guardian, Annie Sanders, filed in the Veterans Bureau her claim for automatic insurance benefits. On December 7, 1933, the Central Committee on Recoveries and Forfeitures, Veterans Administration, held that the recovery of the overpayment of $3400 made to Mary Ann Miller as automatic insurance benefits should not be waived and on December 16, 1933, an award of $25 per month automatic insurance benefits was made to Mary Ann Campbell, effective October 27, 1918 to October 26, 1938, and the $3400, the total

amount previously paid to Mary Ann Miller for the period October 27, 1918, up to and including February 26, 1930, was set off against the award made to Mary Ann Campbell."

The foregoing factual statement is adopted from the defendant's brief as it states substantially the facts stipulated by the parties, but it should be added that the plaintiff brought this action well within the three year period following the removal of her disability of infancy. (Sec. 445, Title 38 U.S.C.A.); that the rights of the parties are to be determined under the War Risk Insurance Act of 1917, that the plaintiff is the only surviving daughter of the deceased soldier; and that the plaintiff's mother, the alleged wife of her deceased father, died on the 2nd day of October, 1924, approximately five years and eleven months after the death of her husband, without ever having been paid any part of the automatic insurance here in question.

Section 401 of the War Risk Insurance Act of 1917, reads as follows: "Sec. 401. That such insurance must be applied for within one hundred and twenty days after enlistment or after entrance into or employment in the active service and before discharge or resignation, except that those persons who are in the active war service at the time of the publication of the terms and conditions of such contract of insurance may apply at any time within one hundred and twenty days thereafter and while in such service. Any person in the active service on or after the sixth day of April, nineteen hundred and seventeen, who, while in such service and before the expiration of one hundred and twenty days from and after such publication, becomes or has become totally and permanently disabled or dies, or has died, without having applied for insurance, shall be deemed to have applied for and to have been granted insurance, payable to such person during his life in monthly installments of $25 each. If he shall die either before he shall have received any of such monthly installments or before he shall have received two hundred and forty of such monthly installments, then $25 per month shall be paid to his wife from the time of his death and during her widowhood, or to his child, or widowed mother if and while they survive him: *Provided, however,* That not more than two hundred and forty of such monthly installments, including those received

by such person during his total and permanent disability, shall be so paid; and in that event the amount of the monthly installments shall be apportioned between them as may be provided by regulations."

The question arising under the foregoing state of facts, the cited section of the Act of 1917 and the pleadings is: Can the Government offset against its admitted liability to the plaintiff the sum of $3400 which it improvidently paid to another?

The Government, in support of the contention that it has the right to offset the $3400 paid to the mother of the deceased soldier against its admitted liability to the daughter of said decedent, leans heavily upon the opinions in the following cases: United States v. Barker, 5 Cir., 70 F.2d 1002; Sevald v. United States, 7 Cir., 73 F.2d 860; Ulmer v. United States, 5 Cir., 86 F.2d 52; United States v. Mroch, 6 Cir., 88 F.2d 888; and United States v. Jackson, 4 Cir., 89 F.2d 572.

■ It is definitely settled in United States v. Jackson, 302 U.S. 628, 58 S.Ct. 390, 392, 82 L.Ed. 488, that the so-called Economy Act of March 20, 1933, 38 U.S.C.A. § 717, did not repeal Section 401 of the War Risk Insurance Act of 1917, which "provided for those soldiers who died in service before they had an opportunity to purchase yearly renewable term insurance or any other type of insurance."

■ It is equally clear, certainly since the filing of the opinion in Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 842, 78 L.Ed. 1434, that War Risk Insurance policies "are legal obligations of the same dignity as other contracts of the United States and possess the same legal incidents"; that such policies "are property and create vested rights"; that "no power to curtail the amount of the benefits which Congress contracted to pay was reserved to Congress"; that no such power "could be given by any regulation promulgated by the Administrator"; that when the Government lawfully becomes a party to such a contract, "its rights and duties therein are governed generally by the law applicable to contracts between private individuals"; that rights arising out of such contracts "are protected by the Fifth Amendment"; and that "the due process clause prohibits the United States from annulling them [such contracts], unless, indeed, the action taken falls within the federal police power or some other paramount power."

■ While the deceased soldier in the instant case did not formally apply for insurance, as he might have done under the Act, and no formal policy of insurance was issued to him, he nevertheless was entitled to the rights and benefits conferred by Section 401 of the Act, as was also the beneficiary named in the Act, in the event of his death. Section 402 of the Act empowered the Director of the Bureau of War Risk Insurance to determine and publish the terms of insurance contracts issued to soldiers pursuant to application therefor, but the Director was not authorized by the Act to determine and publish the terms and conditions of automatic insurance extended in Section 401 of the Act.

■ The Act really provided for two forms of insurance; one to be applied for and the other not. In the case of insurance issued on application therefor, the insured, subject to certain conditions or limitations, had the right to change the beneficiary of such insurance, without the consent of the beneficiary. In the case of automatic insurance, the insured was not permitted to exercise any such right. The automatic insurance features of the Act (Section 401) simply provides that a soldier falling within the terms thereof should "be deemed to have applied for and to have been granted insurance", which, in case of his death, should "be paid to his wife from the time of his death and during her widowhood, or to his child, or widowed mother if and while they survive him." It follows, therefore, that when the deceased soldier died the authorized payments of $25 per month for 240 months first became due and payable to his wife, and after her death to his surviving child, the plaintiff herein.

■ There is no contention that the widow of the deceased soldier, at any time during her life, made any false representation to the Government, or stood mute when good conscience required her to speak, that misled or caused the Government to make payment to the wrong party; nor is any such conduct attributed to the plaintiff. In fact, none such could be attributed to the plaintiff, since during the period in question she was an infant, without capacity to speak for herself.

It is true, as contended by the defendant, that Section 401 of the Act provides, "That not more than two hundred and forty of *such monthly installments,* including those received by such person during his

total and permanent disability, *shall be so paid*". (Emphasis added) The installments here in question, amounting to $3400, were not *so paid;* they were otherwise paid, to the wrong person.

Most of the cases relied upon by the defendant went off on the doctrine of estoppel. In United States v. Barker, 5 Cir., 70 F.2d 1002, 1003, the action was brought by the administrator of the deceased soldier. The insured, in his application for insurance, had stated that a named woman was his wife when in fact she was not his lawful wife, he at that time and at all times thereafter until his death being lawfully married to another. The person named as beneficiary in the policy of insurance thought she was the insured's wife and bona fide made application for the payment of the insurance to her after the death of the insured. The Government paid the insurance to the supposed wife under the belief, induced by the insured's representation, that she was such until it learned that another was the real wife. The Court held, under this state of facts, that the insurance was payable to the estate of the insured, and that "Because of his [the insured's] willful misrepresentation as to the status of Arkansas [the wrongfully designated wife] which deceived the United States into paying her the money, the insured and his administrator and the distributees of his estate are estopped to enforce a second payment" of the insurance. The Court further pointed out that the real wife was interested in the action only as a distributee of her husband's estate, and not as a beneficiary under the policy, which is the reverse of the situation in the instant case.

Sevald v. U. S., 7 Cir., 73 F.2d 860, 861, is quite similar to the Barker case supra. The insured, in his application for insurance, represented one Kamak to be his brother, and designated him as the beneficiary of his policy of war risk insurance. After the death of the insured, Kamak also represented himself to be his brother and claimed the insurance. It turned out that Kamak was only a cousin of the insured,—not one who under the Act could be named a beneficiary of the policy of insurance. The action was brought by the administratrix of the insured and the Court held, that if the insured had brought the action in his own name he would be estopped to assert a claim for what had been "paid out according to his written direction, and appellant's claim is no more meritorious than that of the soldier through whom she claimed." Here again it may be noted that the action in the instant case was not brought by a legal representative of the insured for the benefit of the insured's estate, but by the beneficiary designated in the Act as the one to receive the insurance and the one to whom payment should have been made according to the determination of the Central Committee on Recoveries and Forfeitures of the Veterans Administration made December 7, 1933.

Ulmer v. United States, 5 Cir., 86 F.2d 52, 53, was decided upon the principle announced in the two preceding cases, the Court saying: "Those claiming under the insured are estopped in such circumstances just as he would be from taking advantage of the mistake for which he was responsible."

In United States v. Mroch, 6 Cir., 88 F. 2d 888, it was held: "In suit by veteran's widow as administratrix of his estate for balance due on war risk policy, government could not set off adjusted compensation paid to widow's daughter nor payments made to widow as legal guardian for her son on ground that daughter and son, the veteran's step-children, had never been members of his household and were not entitled to compensation previously paid, since as to such payments there was no mutuality between the claim and set-off." First head note.

The Mroch case tends strongly to support the position of the plaintiff in the instant case, since the plaintiff in this cause is not charged with any responsibility for the payments made by the defendant to her grandmother. If the Government has any claim for the $3400 improvidently paid to the mother of the deceased soldier, it is against the recipient thereof and not against the one to whom the insurance should have been paid, but was not.

As held in United States v. Jackson, 4 Cir., 89 F.2d 572, 573, it was "the intention of Congress to place automatic insurance in the same category as insurance for which application has been made"; "that Congress chose to consider the induction of the soldier into the service and his disability or death within 120 days thereafter as equivalent to an application for and a grant of insurance, so that a contract of insurance of equal validity to those for which applications should be made would

come into existence; and since *Congress accepted the military service as the basis of the contract,* it is of no moment that no written document was issued to the soldier or that no premium for the brief period of 120 days was required"; and "that automatic insurance is a contract" within the meaning of the Act. (Emphasis added) It was "military service", not representations made in the application for insurance, that constituted the basis and consideration for the obligations assumed by the Government.

We must look solely to the Act for the terms of the contract, and it discloses that the Government was bound to pay $25 per month, for two hundred and forty consecutive months, after the death of the soldier, to the widow, or the child, or widowed mother of the deceased, in the order named. The widow of the deceased was paid no part of the insurance. Upon her death the plaintiff succeeded to the right. The mother of the deceased has never been entitled to any part of the insurance.

The defendant entered into a valid and binding contract, based upon the deceased soldier's military service, to pay to the plaintiff, his child, in the event of his death, two hundred and forty consecutive monthly installments of $25 each; and it has not done so. The asserted claim of the defendant to offset lacks the essential element of mutuality to sustain it. United States v. Mroch, supra. It is begging the question to say that the Government has already paid two hundred and forty installments, counting the installments paid to another not entitled thereto. The Act says, "that not more than two hundred and forty of *such monthly installments * * * shall be so paid"*. The terms "such monthly installments" and "so paid" are without significance if they do not relate to the obligation to make payment to the designated beneficiary. The clear intent of the Act was to give protection to the relatives of the deceased soldier in the order named therein, and the obligation was placed upon the administrators of the trust to make payment to the proper party.

The contention that payments improvidently made to the mother of the deceased insured should be credited pro tanto against the lawful claim of the child of said decedent is utterly inequitable, in the absence of any fact or facts warranting the application of the doctrine of estoppel. Furthermore, the Government has no claim or demand against the plaintiff, nor the semblance of one, to set off against its admitted obligation to the plaintiff.

I am of opinion that the plaintiff is entitled to recover the full amount sued for; and an order for judgment, in accordance with this conclusion, will be signed upon presentation.