Madden, Judge,
dissenting:
This case presents a problem of construing certain statutes and executive orders. I am unable to agree with the solution at which the majority opinion has arrived.
The statute upon which plaintiff bases his right to have annual leave with pay is the Act of March 14, 1936, which is quoted in the opinion of the Court. That act provided that persons such as plaintiff “shall be entitled to twenty-six *648 days’ annual leave with pay for each calendar year,” and that if such leave was not fully used in any year the unused part could be accumulated until it totaled not to exceed 60 days.
The Act of 1936 seems to me to have intended to confer upon Government employees a right frequently accorded by private employers to their employees, and which had, indeed, been granted by the Government to its employees for many years, except for the period from July 1, 1932, to April 1, 1933, when annual leave benefits were suspended under the Economy Act of 1932. The words of the 1936 Act, “shall be entitled to,” seem to me to be apt only to express the idea that the employee is to have his pay, without working, for the specified period. I do not see how the Government could have more explicitly promised its employees this benefit than by saying what it did in this statute.
The opinion of the Court seems to take the view that this intention of the Government is qualified by the idea that one, to have his promised leave, must be an “employee,” and that when he ceases to be an employee he forfeits his right, already earned, to be paid for a period without working. There is not a word in the statute indicating that the right is so qualified. Since the supposed qualification amounts, in effect, to a forfeiture of a valuable right already earned, I think it should not be read into the statute by implication. One would not think of reading an act fixing the salaries of employees to mean that one who ceases to be an employee, by resignation or discharge, disables himself from drawing pay earned while he was an employee.
The opinion of the Court suggests the view that the purpose of leave with pay is to provide for the employee a period of rest and refreshment, so that he may return and better serve the Government after his leave. No doubt this is one of the purposes of any employer who encourages his employees to take vacations without losing their pay, by giving them paid vacations. But to make this better service' the quid fro quo for the employer’s agreement to give leave with pay, so that the employee would not be really entitled to the pay for his leave period until he had returned and given the employer the benefit of his re-created energy for a sufficient period, would be a difficult bargain to spell out in a labor *649 agreement or a statute and, so far as I know, it has never before been read into such, an arrangement by implication. The long-continued practice of the Government refutes the implication. The Departments have habitually given resigned employees or those discharged without prejudice their accumulated leave with pay, though they knew perfectly well that the refreshed employee was not going to give the Government the benefit of his vacation. I do not believe that the thousands of instances in which this has been knowingly done represent so many instances of maladministration by the agencies of the Government. To be sure, a certain formula has been followed. The employee has been advised to write his resignation to take effect, or he has been discharged, the discharge to take effect, at the end of his accrued leave. This has become the recognized custom of the Government offices. But this customary procedure has not been in the least inconsistent with the recognition that the employee had, during the time of his actual employment, earned something of value beyond the pay which he had already drawn, and which it would be wholly unfair to deny him just because he was ceasing to be an employee.
Section 7 of the Act of 1936 authorized the President to make regulations for the administration of the Act. Sections 6 and 7 of the President’s regulations were as follows:
Section 6. An employee voluntarily separated from the service without prejudice during any calendar year shall be entitled to accumulated leave plus current accrued leave up to the date of separation.
Section 7. The date of a discharge of an employee who is involuntarily separated from the service other than for cause due to his own misconduct shall be fixed to permit the allowance of all accumulated leave and current accrued leave.
Section 6 was a complete recognition of the right of the employee to his pay for accrued leave though he was in fact separated from the service. It, like the customary department practice, was a negation of the idea expressed in the opinion of the Court that one earns his leave by his work after his vacation, rather than before. Section 7 was a direction as to the routine which should be followed in the case of *650 the discharge of an employee without prejudice. It did not affect the substantial right of the employee, and was in ■accord with the existing custom of the departments. It may be noted that the regulations give no direction as to how to handle the case of a resigned employee. Apparently the President did not regard the customary practice of having employees date their resignations to take effect at the end of their accrued leaves as being of any importance, one way or the other.
Against this background, we look at Section 25 of the Emergency Belief Appropriations Act of 1939, 53 Stat. 927, 936. This act forbade the use of the funds appropriated in it for the operation of any theater project after June 30,1939, but provided that any supervisory employee on such a project could be paid his salary for July. Plaintiff was such a supervisory employee. Section 25 then provided:
This section shall not prohibit the payment of wages or salaries accrued, or of nonlabor obligations incurred, in connection with any such project if the wages or salaries accrued or the obligation was incurred prior to August 1,1939, October 1,1939, or September 1,1939, as the case may be.
The date August 1, 1939, given in this paragraph, is the one applicable to plaintiff, if the paragraph is applicable to his accrued leave.
I think this paragraph of Section 25 will easily bear the construction that Congress did not intend to forfeit plaintiff’s accrued right to be paid for the period of his accrued leave. The right to be paid an additional amount for a period in which one does not work, is really a right to an additional wage or salary. I feel sure that for the purpose of a tax upon wages or salaries, it would be so interpreted. Otherwise there would be a period in each year for all Government employees and millions of other employees, when the employee would get his pay but no tax would be collectible on it. The very word “accrued,” which is used in the leave Statute and Eegulations is used in Section 25.
But if what plaintiff was “entitled to” under the leave statute was not “wages or salaries accrued,” then it was a “non-labor obligation incurred.” I feel sure that Congress did *651 not intend to wind up the federal theater projects by a repudiation of some of the debts of the projects. I do not see how it could have expressed that honorable intention any more pointedly than by saying that both “wages or salaries accrued” and “nonlabor obligations incurred” should be paid. I think it left no opening for the forfeiture of any valuable right which another statute said plaintiff should “be entitled to.”
By this easy construction I would avoid the more difficult task of determining whether Congress may, after one has worked for some two years under a statute which says he shall “be entitled to” certain pay, forfeit his right to the stipulated pay, not for the future, but for the period that he has already worked. See Lynch v. United States, 292 U. S. 571.
Littleton, Judge, concurs in the foregoing opinion.