SOUTH CAROLINA STATE EDU-
CATION ASSISTANCE
AUTHORITY, Plaintiff–Appellee,

v.

Lauro F. CAVAZOS, etc., et al., in his
official capacity as Secretary, United
States Department of Education; U.S.
Department of Education, Defendants–
Appellants,

National Council of Higher Education
Loan Programs, Inc.; Virginia State
Higher Education Assistance Authority,
Amici Curiae.

SOUTH CAROLINA STATE EDU-
CATION ASSISTANCE
AUTHORITY, Plaintiff–Appellee,

v.

Lauro F. CAVAZOS, Secretary of Edu-
cation; U.S. Department of
Education, Defendants–Appellants,

National Council of Higher Education
Loan Programs, Inc.; Virginia State
Education Assistance Authority, Amici
Curiae.

MARYLAND HIGHER EDUCATION
LOAN CORPORATION, a nonprofit
Maryland Corporation, Plaintiff–Appel-
lee

v.

Lauro F. CAVAZOS, Secretary of the
United States Department of
Education, Defendant–Appellant

National Council of Higher Education
Loan Programs, Inc.; Virginia State
Education Assistance Authority, Amici
Curiae.

STATE OF NORTH CAROLINA; The
North Carolina State Education Assist-
ance Authority, Plaintiffs–Appellants,

v.

UNITED STATES of America; Lauro F.
Cavazos, Secretary of the United States
Department of Education; U.S. Depart-
ment of Education, Defendants–Appel-
lees,

National Council of Higher Education
Loan Programs, Inc.; Virginia State
Education Assistance Authority, Amici
Curiae.

Nos. 89–2975, 89–2978, 89–2976, 89–2982.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 3, 1989.

Decided March 7, 1990.
Rehearing and Rehearing In Banc
Denied March 28, 1990.

Neil H. Koslowe, Sp. Litigation Counsel (Stuart E. Schiffer, Acting Asst. Atty. Gen., William Kanter, Deputy Director, Civ. Div., Dept. of Justice, Edward C. Stringer, Gen. Counsel, Harold Jenkins, Brian Seigel, Attys., Dept. of Educ., on brief), for defendants-appellants.

Andrew H. Baida, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., William F. Howard, Mary L. Preis, Asst. Attys. Gen., on brief), James Emory Smith, Jr. (Joseph D. Shine, Atty. Gen.'s Office, on brief), Thomas J. Ziko, Asst. Atty. Gen. (Lacy H. Thornburg, Atty. Gen., Edwin M. Speas, Jr., Sp. Deputy Atty. Gen., on brief), for plaintiffs-appellees.

(Jean Frohlicher, NCHELP, Inc., George G. Olsen, Robert E. Jensen, Williams and Jensen, P.C., on brief), for amicus curiae Nat. Council of Higher Educ. Loan Programs, Inc.

(Mary Sue Terry, Atty. Gen., R. Claire Guthrie, Deputy Atty. Gen., Paul J. Forch, Sr. Asst. Atty. Gen. and Chief, Educ. Section, Richard C. Kast, Asst. Atty. Gen., on brief), for amicus curiae Va. State Educ. Assistance Authority.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

K.K. HALL, Circuit Judge:

These consolidated appeals arise from actions filed by three different state-created agencies against the Secretary of the United States Department of Education ("Secretary") seeking to have certain portions of the 1987 amendments to the Higher Education Act of 1965 ("the Act") declared unconstitutional and to enjoin the Secretary from withholding payments to them in accordance with the amendments. In the South Carolina and Maryland cases, the district courts declared that the statutory provisions in question violated the Fifth Amendment's prohibition against the taking of private property without just compensation. The North Carolina court, however, upheld the statute's constitutionality.

Finding that the amendments do not effect an unconstitutional taking, we reverse the South Carolina and Maryland judgments and remand for further proceedings. We affirm the judgment in the North Carolina case.

## I.

### A. *Statutory Background*

The Act established the Guaranteed Student Loan Program ("GSLP") to assist post-secondary school students. Under the GSLP, private lenders make low-interest loans, subsidized by the federal government, to students. The lenders are insured by various state guaranty agencies that 100% of the unpaid principal of qualifying loans will be paid in case of default. Each state wishing to enable students to participate in the program must either establish its own guaranty agency or designate a private, non-profit agency to serve as such. This agency, in turn, must enter into written agreements with the Secretary by which it agrees to operate the program under GSLP guidelines. The Secretary is also authorized to enter into reinsurance agreements with the guaranty agencies by which the Secretary promises to reimburse between 80%–100% (depending on the agency's default rate) of the amounts expended by the guaranty agency in repaying the unpaid principal remaining on defaulted loans.

In addition to the reinsurance payments, the Secretary is authorized to make advances to enable a new agency to commence operation and administrative cost allowances to offset an agency's operating costs. Subject to statutory restrictions, a guaranty agency is also authorized to receive the following types of payments: (1) a single insurance premium on each loan (not to exceed 3% of the loan) which is paid by the lender and passed on to the student borrower; (2) a set portion of any amounts collected on defaulted loans for which the agency has received a reimbursement from the Secretary; (3) state appropriations; (4) gifts, grants and similar sources; and (5) investment earnings. Each guaranty agency is required to deposit these funds in a "reserve fund." 34 C.F.R. § 682.410(a)(1). The reserve fund may only be used for those GSLP purposes specified by the Secretary, such as paying claims from lenders and administering the program, 34 C.F.R. § 682.410(a)(2–6).

In response to concerns that these reserve funds had grown unnecessarily large, Congress enacted section 3001 of the Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, 101 Stat. 1330–36 (the "1987 Amendments"). These amendments required the Secretary to determine, using a statutory formula, the maximum allowable cash reserve for each guaranty agency. 20 U.S.C. § 1072(e)(2). The Secretary was also required to direct any state agency with an excess to transfer such amount to the Secretary. 20 U.S.C. § 1072(e)(2)(A)–(D). Any amounts recovered from the excess reserves were to be deposited into a student loan insurance fund which is used by the Secretary to make reimbursement payments under the GSLP. 20 U.S.C. § 1081(a). The Secretary is also authorized to waive repayment of any excess for certain specified reasons. 20 U.S.C. § 1072(e)(3).

### B. *The Instant Dispute*

1. The guaranty agency in South Carolina is the South Carolina State Education Assistance Authority ("Authority"). This non-profit agency was created by statute in 1976 to administer the GSLP. Under the excess reserve formula, the Secretary established a cash reserve ceiling of $500,000 and required the Authority to transfer the excess ($2,739,528). The Secretary denied the Authority's request for a waiver of this transfer requirement. When the Authority refused to transfer any of the excess amount, the Secretary began withholding reinsurance payments otherwise payable and applying these withheld amounts toward the $2.7 million due.

In October 1988, the Authority filed an action against the Secretary challenging the constitutionality of the excess reserve and related enforcement provisions of the 1987 amendments. The Authority also challenged both the Secretary's computa-

tion of the excess amount under the statutory formula and his denial of its request for a waiver. On May 31, 1989, the district court declared that the statutory provisions authorizing the withholding of reimbursements violated the Fifth Amendment's Takings Clause because the Authority had acquired "vested property rights" in such payments. Accordingly, the court enjoined any further withholding of reimbursement payments and ordered the Secretary to release any amounts withheld. *S.C. State Educ. Assistance Authority v. Cavazos*, 716 F.Supp. 886 (D.S.C.1989). The Secretary appeals from this order.

2. The guaranty agency in Maryland is the Maryland Higher Education Loan Corporation ("MHELC"), a non-profit corporation established by statute in 1963. MHELC entered into GSLP agreements with the Secretary in 1965. Under the statutory formula, the Secretary determined that MHELC was required to transfer $10,797,400 of its reserve fund. The Secretary denied MHELC's waiver request, and the guaranty agency subsequently refused to voluntarily transfer the excess amounts of its reserve fund. After the Secretary began to withhold reimbursement payments, MHELC filed suit for declaratory and injunctive relief. Unlike the Authority, however, MHELC did not challenge the Secretary's computation of its excess, nor did it challenge the denial of a waiver. The district court adopted the reasoning of the South Carolina court and granted the relief sought by MHELC. *Md. Higher Educ. Loan Corp. v. U.S. Dept. of Educ.*, Civ. No. S 89-270 (D. Md. June 12, 1989). The Secretary's appeal followed.

3. The North Carolina State Education Assistance Authority ("NCSEAA") was created by the state in 1965 to administer a higher education loan program. In 1966, NCSEAA entered into the first of several agreements with the Secretary by which North Carolina agreed to participate in the GSLP. In 1988, the Secretary informed NCSEAA that it had an excess reserve of $15,911,946. Upon partial approval of NCSEAA's request for a waiver, this amount was reduced to $2,632,785. NCSEAA refused to transfer any of its

excess to the Secretary and, as in the Maryland and South Carolina situations, the Secretary began to withhold reimbursement payments otherwise payable under the GSLP.

NCSEAA filed an action in district court challenging, *inter alia*, the constitutionality of the 1987 amendments' excess reserve provisions. On July 20, 1989, the district court upheld the constitutionality of the excess reserve amendments on the ground that the funds in question are public, rather than private, property and, as such, were not within the ambit of the Fifth Amendment's Takings Clause. Accordingly, the Secretary's motion for summary judgment was granted. *State of N.C. v. United States*, 725 F.Supp. 874 (E.D.N.C. 1989). NCSEAA appeals from this ruling.

## II.

■ In each contract with the Secretary, the executory state agency agreed "to be bound by all changes in the Act or regulations in accordance with their effective dates." The regulations include a similar requirement. 34 C.F.R. § 682.400(d). The South Carolina court cites *The Sinking Fund Cases*, 99 U.S. (9 Otto) 700, 25 L.Ed. 496, 504 (1879), and *Bowen v. Agencies Opposed to Soc. Sec. Entrapment*, 477 U.S. 41, 106 S.Ct. 2390, 91 L.Ed.2d 35 (1986), for the proposition that only an *express statutory* reservation in an act of the power to amend is effective to permit subsequent legislative alteration of agreements entered into by the federal government in conformity with such act. We do not read these cases so restrictively. In *Bowen*, although the power to amend was reserved in the authorizing legislation under which the agreements at issue were executed, the Court focused on the notice such express reservation provided to the state that the statute could be amended in the future. *Id.* at 53, 106 S.Ct. at 2397. Moreover, the Court in *Bowen* noted that the power to amend is deemed to have been reserved *unless* it is expressly relinquished. *Id.* at 52, 106 S.Ct. at 2396. As the Court noted, "contractual arrangements, including those to which a sovereign

itself is party, 'remain subject to subsequent legislation' by the sovereign." *Id.* (quoting *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 147, 102 S.Ct. 894, 906, 71 L.Ed.2d 21 (1982)). Accordingly, we find no merit in the agencies' arguments that this power to amend was not reserved. *See also Great Lakes Higher Educ. Corp. v. Cavazos*, 711 F.Supp. 485, 494–96 (W.D. Wis.1989); *State of Del. v. Cavazos*, 723 F.Supp. 234, 241–42 (D.Del.1989). We turn, then, to the agencies' contentions that they had "vested property rights" which even a properly reserved power to amend could not reach.

## III.

■ The constitutional provision at the core of these disputes is the Takings Clause of the Fifth Amendment: "[N]or shall private property be taken for public use, without just compensation." Simply stated, the state agencies contend that the transfer requirement of 20 U.S.C. § 1072(e)(2) contravenes this constitutional provision because the agencies' reserve funds constitute "private property" accrued pursuant to contracts with the Secretary. We agree with the Secretary and the North Carolina district court, however, that the excess reserve funds are not "private property" within the meaning of the Takings Clause.

The essential aspects of private property are "free use, enjoyment and disposal," *Buchanan v. Warley*, 245 U.S. 60, 74, 38 S.Ct. 16, 18, 62 L.Ed. 149 (1917), and the "right to exclude others," *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011, 104 S.Ct. 2862, 2877, 81 L.Ed.2d 815 (1984). As explained in *Ruckelshaus*, such property interests " 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law' [citations omitted]." *Id.* at 1001, 104 S.Ct. at 2872. The nature of the loan program militates against a finding that the state agencies possessed such indicia of private ownership. As the North Carolina district court stated, "[i]f property comes within the control of the United States to such an extent that its use is ultimately under the direction of the United States, then it loses its character as 'private' property and becomes public to such an extent that it is not subject to a takings prohibition under the Fifth Amendment." *State of N.C. v. United States*, 725 F.Supp. at 876–77 (E.D.N.C. 1989). We agree that the regulations which completely control the reserve funds' uses are the sort of "existing rules or understandings" which prevent any of the guaranty agencies from acquiring an ownership interest in its reserve fund which would entitle it to protection as private property under the Takings Clause.

## IV.

■ An alternative argument raised by the state agencies focuses not on the reserve fund itself as the property allegedly being taken but, rather, on the enforcement mechanism of the 1987 amendments which the state agencies claim acts to take their "vested contractual rights" to receive reimbursement payments. The South Carolina district court held that even if the power to amend had been effectively reserved, the contractual right to reimbursement payments had already vested in the Authority with regard to default payments already made. 716 F.Supp. at 794. The court's analysis proceeds from the principle that contractual rights are generally recognized to be property for purposes of the Takings Clause. *See, e.g., Lynch v. United States*, 292 U.S. 571, 579–80, 54 S.Ct. 840, 843–44, 78 L.Ed. 1434 (1934). Citing *The Sinking Fund Cases*, 99 U.S. at 719–21, the South Carolina court recognized that there exist some limits on the federal government's power to unilaterally amend its contracts and concluded that the 1987 Amendments had exceeded such limits. For a number of reasons, however, we believe that the state agencies' "contractual rights" to reimbursement payments had not "vested" so as to trigger Fifth Amendment protections.

■ The analysis of the vested/non-vested nature of the right to reimbursements is intertwined with the earlier discussion of the nature of the reserve funds themselves.

The reserve funds are generated solely within the framework of a federal social welfare program involving students and prospective students throughout the nation. Just as the complete federal control over the use of the fund compels the conclusion that the targeted funds do not constitute private property for Fifth Amendment purposes, the contractual right to reimbursement payments destined for inclusion in such reserve funds similarly is not the type of property subject to the "takings" prohibition. The reservation of the power to amend the terms of the GSL program prevents the participating state agencies from invoking the Fifth Amendment Takings bar against subsequent Congressional action. *Great Lakes Higher Educ. Corp.*, 711 F.Supp. at 495–96. The Court in *Bowen* emphasized that the sovereign authority to alter its contracts by subsequent legislation should not, if possible, be foreclosed and especially so in the context of a "comprehensive social welfare program." 477 U.S. at 52–53, 106 S.Ct. at 2396–97. We conclude that the public nature of the reserve funds themselves, coupled with the express contractual reservation of the power to amend the terms of the GSL program and the fact that the legislative changes involve a comprehensive federal/state social welfare program, forecloses a finding that the state agencies have obtained unalterable vested property rights to certain payments.

## V.

For the foregoing reasons, the judgments in the South Carolina and Maryland cases are reversed and these cases are remanded for further proceedings consistent with this opinion. The judgment in the North Carolina case is affirmed.

Nos. 89–2975, 89–2976 and 89–2978—REVERSED AND REMANDED.

No. 89–2982—AFFIRMED.