**VIRGINIA STATE EDUCATION ASSISTANCE AUTHORITY, Plaintiff,**

**v.**

**Lamar ALEXANDER, Secretary of Education, et al., Defendants.**

**Lamar ALEXANDER, Secretary of Education, Plaintiff,**

**v.**

**VIRGINIA STATE EDUCATION ASSISTANCE AUTHORITY, Defendant.**

Civ. A. Nos. 88–00874–R, 89–00586–R.

United States District Court, E.D. Virginia, Richmond Division.

July 30, 1991.

Richard C. Kast, Virginia Office of Atty. Gen., Richmond, Va., for plaintiff.

Debra J. Prillaman, Asst. U.S. Atty., Neil H. Koslowe, Civ. Div., Dept. of Justice, Shawn B. Jensen, Trial Atty., pro hac vice, Washington, D.C., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This action is before the Court on the parties' Cross Motions for Summary Judgment. The parties have fully briefed the issues before the Court, and the motion is ripe for decision.

**1.** Certain of the guaranty agencies are private working at the behest of the state. This variable

## BACKGROUND

The Plaintiff Virginia State Education Assistance Authority ("VSEAA") commenced this action in January 1989 to challenge the constitutionality and lawfulness of a portion of the Omnibus Reconciliation Budget Act of 1987, Pub.L. No. 100–203, 101 Stat. 1330, which amended Section 422 of the Higher Education Act of 1965, 20 U.S.C. §§ 1001 *et seq.* ("the Act"). The VSEAA's suit asserted that Section 3001 of the law, codified at 20 U.S.C. § 1072(e), violated the Constitution's Fifth Amendment, constituted a breach of contract, and was an unconstitutional enactment of a tax that discriminated against the several states. Although Section 1072(e)—by its own terms—is no longer in effect, the VSEAA challenges the past implementation of the statute and its continuing resonance in the actions of the United States Department of Education ("the Department"). The Department filed its action against the VSEAA to enforce the dictates of Section 1072(e).

### I. *Statutory Background*

The Higher Education Act established the federal Guaranteed Student Loan Program ("GSLP") to assist post-secondary students in their educational pursuits. See 20 U.S.C. §§ 1070–1098. Under the GSLP, private lenders make government-subsidized, low-interest loans to qualifying students. Repayment of these loans is insured by various state guaranty agencies, such as the VSEAA, which operate the loan programs pursuant to federal guidelines.[1] To establish their role as program operators these guaranty agencies enter contracts with the Department. With these contracts, the agencies agree to follow federal regulations, and the Department generally agrees to reimburse 80–100% of any amounts expended by the guaranty association to repay defaulted loans.

Subject to statutory limitations, a guaranty agency is authorized to receive certain funds: for example, an insurance premium

does not affect the motions at issue herein.

on each loan, a set percentage of collections on defaulted loans and investment earnings. A guaranty agency receiving these funds is required to deposit them in a "reserve fund," which may be used only for specified purposes in furtherance of the GSLP's goals. See 34 C.F.R. § 682.410(a). In response to the growth of these reserve funds, Congress enacted the challenged amendment, 20 U.S.C. § 1072(e) (repealed September 30, 1989). Section 1072(e) created a formula for calculating allegedly "excess" reserves and required the guaranty agencies to eliminate these excess reserves. Under the statute this could occur by one of four methods, including by the transfer of the excess to the Department or by the Department's withholding reimbursement funds owed any guaranty agency with excess reserves. 20 U.S.C. § 1072(e)(2)(A)–(D). Section 1072(e) specifically provided that the Department was to deposit recovered funds in a federal loan insurance fund, earmarked for reimbursement payments to the state guaranty agencies for defaulted loans. See 20 U.S.C. § 1081(a).

## II. *Development of the Instant Action*

In reliance on 20 U.S.C. § 1072(e), on February 9, 1988, the Department notified the VSEAA that its reserve fund exceeded the statutorily allowed limit. After granting the VSEAA a waiver of several million dollars of the excess reserves, the Department determined that the VSEAA reserve funds were excessive in the amount of $20,-842,452. The VSEAA, which disagreed, refused to pay and filed the instant suit challenging the constitutionality of Section 1072(e). While this action was pending, the Department has set off amounts it owed the VSEAA against the disputed excess in accordance with Section 1072(e)(2)(B). The set-off amounts arose pursuant to the Department's contractual obligations to the VSEAA to reimburse it for payments tendered to lenders for defaulted loans. Some of the set offs occurred after 20 U.S.C. § 1072(e) lapsed of its own terms on September 30, 1989. Attempting to assure its right to continued set offs against claims by the state agency for defaulted loans after the lapsing of Section 1072(e)—until the excess has been recovered by the Department—the Department filed suit against the VSEAA in September 1989.

The Court consolidated the two suits, which present identical legal issues for resolution. During the pendency of these actions more than half of the Circuit Courts of Appeal, including the Fourth Circuit, have assessed the constitutionality of the challenged provisions, each time holding them lawful. See *South Carolina State Educ. Assistance Auth. v. Cavazos*, 897 F.2d 1272 (4th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 243, 112 L.Ed.2d 202 (1990).[2] As discussed below, these decisions severely limit the viability of the plaintiff's central arguments.

Because the parties do not dispute the material facts, the action is properly decided on these Cross Motions for Summary Judgment. See Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## DISCUSSION

The parties initially briefed their respective motions for summary judgment prior to the ruling of the Fourth Circuit in *South Carolina State Education Assistance Authority v. Cavazos* ("*South Carolina SEAA*"), 897 F.2d 1272 (4th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 246, 112 L.Ed.2d 205 (1990). The decision in *South Carolina SEAA*, which held that Section 1072(e) was constitutional, lays to rest the VSEAA's primary argument. Yet, the VSEAA also forwards several alternative arguments for summary judgment in its

---

**2.** See also *Rhode Island Higher Educ. Assistance Auth. v. Secretary, United States Dep't of Educ.*, 929 F.2d 844 (1st Cir.1991); *State of Delaware v. Cavazos*, 919 F.2d 137 (3rd Cir.1990), aff'g 723 F.Supp. 234 (D.Del.1989); *Great Lakes Higher Educ. Corp. v. Cavazos*, 911 F.2d 10 (7th Cir. 1990); *Education Assistance Corp. v. Cavazos*, 902 F.2d 617 (8th Cir.), cert. denied, — U.S. —, 111 S.Ct. 246, 112 L.Ed.2d 205 (1990); *Ohio Student Loan Comm'n v. Cavazos*, 900 F.2d 894 (6th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 245, 112 L.Ed.2d 203 (1990).

favor that the Court will assess in greater detail.

## I. *The Fourth Circuit Decision Upholding Section 1072(e)*

In *South Carolina SEAA*, the Fourth Circuit upheld Section 1072(e) in the face of a constitutional challenge, holding that its mandate of repayment of the excess reserves or set off of federal reimbursements did not amount to a taking in contravention of the Fifth Amendment. *Id.* at 1276–77. The court reasoned that the guaranty agencies did not have a property interest protected by the taking clause.

Underlying the court's analysis was a finding that through both federal regulations and the Department-guaranty agency contracts, the federal government reserved the right to amend the terms of the contracts at any time. *Id.* at 1275–76. With this in mind, the circuit court concluded that requiring payment of the excess reserve funds to the Department did not amount to a taking because the guaranty agencies lacked a mature property interest in the reserve funds, an interest that must underlie any claimed taking. *Id.* at 1276. Similarly, the Fourth Circuit held that the remedial set offs did not constitute a taking of contractual property rights. The court reasoned that as the fund itself did not constitute property subject to the takings clause, "reimbursement payments destined for inclusion in such reserve funds is not the type of property subject to the 'takings' prohibition." *Id.* at 1277. In other words, the guaranty agencies' right to reimbursement for payments already made on defaulted loans did not give rise to a vested contractual property right.[3]

In its initial Motion for Summary Judgment, the VSEAA primarily argued that both the required return of excess funds from the reserve funds, 20 U.S.C. § 1072(e)(2)(A), and the alternative withholding of reimbursements, 20 U.S.C. § 1072(e)(2)(B), were takings in violation of the Fifth Amendment. The Fourth Circuit

precedent directly on point, which conclusively determines that the federal actions did not impinge private property of the VSEAA and therefore did not involve a taking, forecloses these arguments. See *South Carolina SEAA, supra.* In addition, the Fourth Circuit opinion, sustaining the statute renders unsuccessful the VSEAA's argument that the Section 1072(e) is unconstitutional as patently irrational and therefore in violation of equal protection. The VSEAA, nonetheless, offers several other arguments not directly discussed by the Fourth Circuit to challenge the viability of Section 1072(e).

## II. *Do the Amendments, As Applied, Constitute An Impermissible Invalidation of Vested Contractual Commitments?*

■ The VSEAA first argues that the amendments to the Act, as applied, constitute a *retroactive* invalidation of vested contractual commitments in violation of the Fifth Amendment's guarantee of due process. Although the Constitution's contract clause does not apply to the federal government, the Supreme Court has held that Fifth Amendment due process imparts a degree of protection from federal impairment of pre-existing contractual rights and duties. See *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733, 104 S.Ct. 2709, 2719, 81 L.Ed.2d 601 (1984). Generally, Fifth Amendment due process applies "less searching standards" on federal legislation than the contract clause applies to similar state regulation, demanding only that it not be arbitrary and irrational. *Id.* A viable argument, however, exists that due process demands a closer review where the contracts impaired are, as here, contracts to which the federal government is a party for in such instances the "state's self-interest is at stake." *United States Trust Co. v. New Jersey*, 431 U.S. 1, 26, 97 S.Ct. 1505, 1519, 52 L.Ed.2d 92 (1977); see *Lynch v. United States*, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934).

---

**3.** There was no dispute that a vested contractual right amounts to property protectible by the Fifth Amendment Takings Clause. See *Lynch v.*

*United States,* 292 U.S. 571, 579–80, 54 S.Ct. 840, 843–44, 78 L.Ed. 1434 (1934).

In this regard, the Supreme Court recently wrote: "Congress does not have the power to repudiate its own debts, which constitute 'property' to the lender, simply in order to save money." *Bowen v. Public Agencies Opposed to Social Sec. Entrapment*, 477 U.S. 41, 55, 106 S.Ct. 2390, 2398, 91 L.Ed.2d 35 (1986).

Regardless, of the appropriate standard of review of a federal impairment of contractual rights, however, the object of any such review, of course, must be *vested* contractual rights. VSEAA argues that it accrued vested, contractual rights to reimbursement for default payments on those loans that it had guaranteed prior to the enactment of Section 1072(e). VSEAA thereby contends that Section 1072(e), which allowed the Department to forego reimbursement for default payments on those very loans, impaired vested, contractual obligations. In support of its argument, VSEAA points to a District of Rhode Island decision. That decision, however, was reversed on appeal. See *Rhode Island Higher Education Assistance Auth. v. Cavazos*, 929 F.2d 844 (1st Cir.1991), *rev'g*, 749 F.Supp. 414 (D.R.I.1990). In addition, the contention that pre-Section 1072(e) contractual rights had vested contravenes the holding implicit in the Fourth Circuit decision in *South Carolina SEAA*.

The Fourth Circuit in *South Carolina SEAA* did not expressly discuss whether the guaranty agencies held a vested contractual interest in reimbursement payments within the meaning of the Fifth Amendment due process clause. The circuit court did, however, conclude that the guaranty agencies lacked such an interest within the meaning of that amendment's takings clause. Although the court did not plainly state whether the agencies lacked a vested interest in reimbursement even for loans that it had guaranteed prior to the enactment of Section 1072(e), implicit in its decision was the assertion that the agencies lacked a vested contractual interest in *any* reimbursement.

The Fourth Circuit emphasized that the sovereign authority to freely alter its contracts is at its greatest in the context of social welfare programs, such as in the Guaranteed Student Loan Program. The court concluded:

> [T]he public nature of the reserve funds themselves, coupled with the express contractual reservation of the power to amend the terms of the GSL program and the fact that the legislative changes involve a comprehensive federal/state social welfare program, forecloses a finding that the state agencies have obtained unalterable vested property rights to such payments.

*South Carolina SEAA*, 897 F.2d at 1277. In other words, the court implied, as long as guaranty agencies hold reserve funds (and particularly *excess* reserve funds) to cover defaulted loans, the agencies cannot expect definite reimbursement from the Department and no vested right to such reimbursement may arise. Logically, this applies to all guaranteed student loans, whether entered prior to or after enactment of Section 1072(e), for—as the Fourth Circuit concluded—the Department at all times reserved the right to alter the underlying contracts.

In addition, the First Circuit reversed the authority upon which VSEAA relies. In *Rhode Island Higher Education Assistance Authority*, 929 F.2d at 850, the First Circuit recognized that "whether a statutorily spawned contract right is a vested property right for purposes of the fifth amendment turns on whether Congress reserved power to modify the terms of the contract." *Id.* The court implicitly reasoned that where Congress reserves the power to modify a contract, vested contractual rights do not emerge. As the Fourth Circuit concluded in *South Carolina SEAA*, the First Circuit also found that Congress implied in the Higher Education Act its right to freely amend the statute and the contracts that it governs. The First Circuit thus concluded—in contrast to the Rhode Island district—that the state did not hold a fully vested contractual right to reimbursements for any of the guaranteed contracts, including pre-existing contracts which the Department also had re-

tained the right to alter.[4] The court found that Section 1072(e) did not violate the state agency's Fifth Amendment due process rights and that Section 1072(e)'s remedy allowing the Department to withhold reimbursements could constitutionally be imposed on the right to obtain reimbursement for loans guaranteed both prior to and after its enactment. *Id.* at 852.

The Fourth Circuit's ruling in *South Carolina SEAA* makes clear that the VSEAA's argument falls short. Because the Department retained the right to alter both pre-existing and contemporaneous contracts, the VSEAA did not have a fully vested contractual interest in reimbursement from the Department. This holds true not only for the purposes of the takings clause as the Fourth Circuit stated, but also for Fifth Amendment due process analysis. This conclusion is only bolstered by the First Circuit's decision, and this Court concludes—as did that appellate court—that the contracts did not give rise to a fully vested contractual right for the VSEAA for the purposes of Fifth Amendment due process analysis. Consequently, Section 1072(e) does not impermissibly invalidate vested contractual obligations in contravention of the fifth amendment regardless of whether the VSEAA guaranteed the underlying loan agreements before or after the enactment of Section 1072(e).[5]

III. *Do the Amendments Constitute an Impermissible Enactment of a Tax that Discriminates Against the States?*

 The VSEAA also contends that the amendments to the Act constitute an unconstitutional enactment of a tax that discriminates against the states. As Amicus Curiae in *South Carolina SEAA*, the VSEAA presented this argument to the Fourth Circuit. Although—evidenced by its silence on the issue—the Fourth Circuit did not feel at that time that this argument warranted its attention, to afford the VSEAA a fair hearing on this issue, the Court will herein address its merits.

The doctrine of intergovernmental tax immunity emerged from the Supreme Court's decision in *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1810), wherein the Court held that a state tax imposing a burden on the federal government violated the Constitution. Subsequently, the Court extended the doctrine to embrace a correlative immunity of state governments from federal taxation. See *Collector v. Day,* 78 U.S. (11 Wall.) 113, 20 L.Ed. 122 (1870). Although initially the state's immunity from federal taxation was near complete (except where the state acted in the character of a private business), the Court subsequently limited the doctrine allowing federal taxation that incidentally affected the states as long as it did not discriminate against them *as states.* See *New York v. United States,* 326 U.S. 572, 582, 66 S.Ct. 310, 314, 90 L.Ed. 326 (1946). Furthermore the Court has held that a "nondiscriminatory taxing measure" that defrays the cost of a federal program by recovering a share of each beneficiary's cost is not an unlawful tax. *Massachusetts v. United States,* 435 U.S. 444, 460, 98 S.Ct. 1153, 1163, 55 L.Ed.2d 403 (1978). In particular, the Court endorsed a three-prong test under which a tax affecting the states bears constitutional muster if it: (1) does not discriminate against state functions; (2) is based upon a fair approximation of use of the system; and (3) is structured to produce revenues that will not exceed the total cost to the Federal Government of the benefits to be supplied. *Id.* at 466–67, 98 S.Ct. at 1166–67.

Whether Section 1072(e) enacted an unconstitutional tax against the states thus demands a two-tiered inquiry. First, the Court must determine whether the amendment enacted a tax. And second, if it did

---

**4.** The First Circuit also reasoned that the Department's acts did not abrogate the state's contractual right to reimbursement but rather only conditioned that right.

**5.** VSEAA's argument that Section 1072(e) violates the Fourteenth Amendment's prohibition on questioning the public debt of the United States is identical to its Fifth Amendment due process argument and therefore fails for the same reasons.

enact a tax, the Court must assess whether the tax met the requirements set forth in *Massachusetts v. United States*, supra.

The VSEAA's argument falls on the first of these inquiries, for, in the Court's view, Section 1072(e) does not amount to a tax. VSEAA contends that if the taking of the excess reserve funds does not amount to a Fifth Amendment taking, it is a tax. VSEAA asserts that characterizing it as a tax is consistent with commonly held notions of the term. It explains: Section 1072(e) was part of a budget reduction effort by Congress and therefore is an attempt at budget balancing, which most often is accomplished through taxation. This somewhat simplistic argument becomes less viable with detailed consideration.

As the United States argues, the recovery provisions enacted in Section 1072(e) are neither a taking nor a tax. These provisions, *which aim to defray the costs of a federal/state welfare program with revenue raised in that program,* are no more than regulation. In *Edye v. Robertson ("The Head Money Cases"),* 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (1884), the Supreme Court held that a statute requiring ship owners to pay 50 cents to the United States for every non-citizen transported into the country—money which was used to defray federal immigration expenses—was not a tax, but rather "the mere incident of commerce ... involved in immigration." *Id.* at 595, 5 S.Ct. at 252. As the Department recognizes, the *Head Money Cases* implicitly held that an exaction imposed on a party engaged in an activity for the purpose of defraying costs imposed on the government in regulating the activity is not a tax. See *id.* at 595–96, 5 S.Ct. at 252–53. See also *State of South Carolina v. Block,* 717 F.2d 874, 887 (4th Cir.1983), cert. denied, 465 U.S. 1080, 104 S.Ct. 1444, 79 L.Ed.2d 764 (1984) (where "regulation is the primary purpose of a statute, revenue raised under the statute will be considered a fee rather than a tax").

The VSEAA argues that the *Head Money Cases* are inapplicable because they address a fee overtly a part of a regulatory scheme, legislation entitled: "An Act to Regulate Immigration." Although the provisions at issue herein are not styled "regulation", they nonetheless are a part of an intricate regulatory scheme set by Congress to enable students to receive low-interest loans. That they are a part of this scheme—and not simply a tax on the scheme—is evident from the fact that the reserve funds at issue are comprised primarily of funds raised in conjunction with operation of the scheme or through investment of such funds. Further, as discussed above, the agencies that operate the student loan scheme do not have a vested property interest in the reserve funds generated from the loan scheme, funds which the agencies may use only for particular purposes in furtherance of the plan. Consequently, each agency's relationship to the reserve funds is almost tantamount to that of a fiduciary for the federally regulated plan. In such a position it is more than rational that the federal government—which afterall may change the terms of the underlying contracts—may require the return of a portion of those funds as a part of the regulatory scheme and not as a tax.

As in the *Head Money Cases,* the provision at issue here was passed as a means of defraying the federal costs associated with operating the federal GSLP. Although the VSEAA emphasizes that the law within which it is ensconced—as well as the provision itself—was passed to reduce the federal deficit, such can be said of any law that raises revenue for the federal government. The linchpin here, however, is that the money recovered under the challenged provisions is deposited in a student loan insurance fund, established by 20 U.S.C. § 1081(a), from which the Department makes reimbursement payments. It cannot be disputed then that the primary purpose of the provisions is to aid the operation—or the regulation—of the program as a whole, appropriately with the use of funds internally raised. The Court thus concludes that this is not taxation, but rather a fee fairly and proportionately charged agencies operating the GSLP.

## IV. *Do the Amendments Violate the Tenth Amendment?*

■ The VSEAA also claims that Section 1072(e) violates the Tenth Amendment. That amendment states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." In assessing whether federal action impinges on the state's Tenth Amendment protected rights, the Supreme Court has explained that the amendment's protections are structural, not substantive. *South Carolina v. Baker,* 485 U.S. 505, 512, 108 S.Ct. 1355, 1360, 99 L.Ed.2d 592 (1988). The Court wrote: "[T]he states must find their protection from congressional regulation through the national political process, not through judicially defined spheres of unregulable state activity." *Id.* The Court thus held that federal regulation of state activities may be invalid under the Tenth Amendment only if the state alleges and proves "some extraordinary defects in the national political process." *Id.* Such procedural defects might be the deprivation of the right to participate in the political process or the singling out of a state in a manner that left it "politically isolated and powerless." *Id.* at 513, 108 S.Ct. at 1361.

The VSEAA claims that the guaranty agencies "received no meaningful opportunity to address" the amendments before they were enacted. The allegation neither claims that Virginia was singled out for punishment nor asserts that Virginia's representatives were excluded from the political process. Consequently, the allegation on its face fails to even allege that a state was left "politically isolated and powerless." In addition, it is uncontroverted that Senator Warner of Virginia addressed the Senate, expressly raised the VSEAA's concerns and sought legislative relief on its behalf. See 133 Cong.Rec. S17688–89. Apparently, because his efforts failed, the VSEAA seeks a declaration from the Court that the political process suffered extraordinary defects. These arguments fail to persuade the Court that the enactment of Section 1072(e) was in violation of the Tenth Amendment.

■ VSEAA also argues that the passage of the challenged amendments violates the Tenth Amendment in light of the Seventeenth Amendment, which provides that Senators will be elected by popular vote. The VSEAA contends that the Seventeenth Amendment undermined the historic protection of the states' sovereign interests because it rendered Senators answerable to the people of the state rather than to the state legislatures. Lacking an independent voice that represents the interests of state sovereignty, the VSEAA concludes, the Tenth Amendment's protections are rendered hollow unless the federal courts step in and actively protect state interests.

In *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the Supreme Court considered an analogous and correlative argument within the context of the commerce clause. The Court assessed whether the Seventeenth Amendment has a bearing on Congress's power under the commerce clause to enforce Fair Labor Standards Act provisions against state entities and whether notions of state sovereignty derived from the Tenth Amendment prohibited such actions. The Court concluded that "[s]tate sovereign interests ... are more properly protected by procedural safeguards inherent in the structure of the federal system than by judicially created limitations on federal power." *Id.* at 552, 105 S.Ct. at 1018. As the Department emphasizes, the Court acknowledged:

[C]hanges in the structure of Federal Government have taken place since 1789, not the least of which has been the substitution of popular election of Senators by the Seventeenth Amendment.... Nonetheless ... we are convinced that the fundamental limitation that the constitutional scheme imposes on the Commerce Clause to protect the "States as States" is one of process rather than result.

With this in mind, the Court concludes that similarly the Tenth Amendment, which to some extent is correlative to the commerce clause, also imposes a burden of fair pro-

**1118**

cess on the federal government, a process with which—as discussed above—Congress complied in enacting the challenged provisions. For these reasons, the VSEAA's argument that the disputed amendments were enacted in violation of the Tenth Amendment falls short.

## V. *Was the VSEAA Denied Procedural Due Process?*

 The VSEAA finally claims that it was denied due process in the review procedure ensconced in the amendments. Section 1072(e)(3) allows a state agency to apply for a waiver of any amounts that the Department finds as excess reserves. The VSEAA argues that the review process denied it due process because it did not allow the VSEAA a hearing on the record, the formal introduction of evidence or cross examination of witnesses. In addition, the VSEAA complains that the Secretary himself and not his delegate should have decided whether to grant the waiver.

The VSEAA's objections are without merit. Section 1082(a)(3) allows for a hearing on the record if the modification of a contract for federal loan insurance is involved, and the Administrative Procedure Act instructs that such hearings must be held "in every case of adjudication *required by statute* to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a) (emphasis added). The grant or denial of a waiver under Section 1072(e), however, does not involve the modification of a federal agreement to insure a loan, and the APA was not breached because *the statute* did not require a hearing. In addition, the Secretary's delegate was expressly authorized by the Secretary to make the waiver decision. See 20 U.S.C. § 3472; 45 Fed.Reg. 81000 (1980). Finally, the Department actually granted the VSEAA a valuable waiver, suggesting that it fairly reviewed VSEAA's claim. For these reasons, it is clear that the VSEAA's procedural due process rights were not violated in the process of reviewing its request for a waiver.

## CONCLUSION

For the foregoing reasons, the Court concludes that the VSEAA's Motion for Summary Judgment should and will be denied. The Department's Cross–Motion for Summary Judgment should and will be granted.